In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00096-CV
______________________________


 
 
IN THE MATTER OF THE MARRIAGE OF
BELINDA ANN JOYNER AND THOMAS STEPHEN JOYNER
AND IN THE INTEREST OF THOMAS HAYDEN JOYNER, A CHILD
 
 


                                              

On Appeal from the 76th Judicial District Court
Titus County, Texas
Trial Court No. 29,294


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N
 
1.         Statement of the Case
            The trial court announced, "your divorce is granted." The question presented is whether that
pronouncement was the rendition of a final judgment in a divorce and child conservatorship case
when the parties had previously entered a mediated settlement agreement complying with statutory
provisions which made the agreement immediately binding and irrevocable on the parties and
entitled them to a judgment on the agreement. We find the trial court rendered judgment by its oral
pronouncement. 
            On May 29, 2001, Belinda Joyner filed for divorce from Thomas Joyner. At the end of their
third mediation April 7, 2003, the parties signed a mediated settlement agreement that delineated and
partitioned most of their property and conservatorship and support of their minor son. The parties
met for their "final hearing" on July 2, 2003, to argue the few personal property issues they had been
unable to resolve in mediation. 
            On July 3, 2003, the day after the final hearing, Thomas purchased a winning lottery ticket
worth $2,080,000.00. Almost a year later, on May 7, 2004, Belinda filed a motion for final trial
setting, claiming the divorce had never been finalized, she was still married to Thomas, and the
$2,080,000.00 should be divided as community property. On June 28, 2004, the court signed a
"Final Decree of Divorce," which stated the divorce had been judicially pronounced and rendered
on July 2, 2003. Belinda appeals, claiming the divorce was not final until June 28, 2004. 
2.         Issues Presented
            The issue in this case is whether the trial court's actions on July 2, 2003, constituted an oral
rendition of judgment on the Joyners' divorce. A decision on this issue directly affects the
categorization of the lottery winnings as Thomas' separate or the Joyners' community property.
            Belinda contends the trial court did not render a final judgment on the three issues before it
(the divorce, the property division, and the custody of their son) until June 28, 2004. She claims the
trial court was required to specifically render judgment on each of these issues before she and
Thomas could be deemed divorced. In the alternative, Belinda asserts even if the trial court rendered
the parties divorced, it did not render final judgment because it did not render a decision on the
property issues, relying on caselaw that a court cannot sever the divorce from the property. She
contends she and Thomas were still married when he won the lottery, and therefore she is entitled
to a just and right division of those winnings.
3.         Analysis
            a.         The Dissolution of the Marriage
            A judgment is rendered when the court makes an official announcement, either in writing or
orally  in  open  court,  of  its  decision  on  the  matter  submitted  for  adjudication.  James  v.
Hubbard, 21 S.W.3d 558, 561 (Tex. App.—San Antonio 2000, no pet.); In re Bland, 960 S.W.2d
123, 124 (Tex. App.—Houston [1st Dist.] 1997, no pet.). Once a judgment is rendered by oral
pronouncement, the entry of a written judgment is purely a ministerial act. Keim v. Anderson, 943
S.W.2d 938, 942 (Tex. App.—El Paso 1997, no pet.); see also Dunn v. Dunn, 439 S.W.2d 830,
832–33 (Tex. 1969) (oral rendition of divorce constituted as final judgment even though judgment
not signed until after spouse's death). 
            In order to be an official judgment, the trial court's oral pronouncement must indicate intent
to render a full, final, and complete judgment at that point in time. S & A Rest. Corp. v. Leal, 892
S.W.2d 855, 858 (Tex. 1995); In re Marriage of Ellsworth, No. 07-01-0072-CV, 2001 Tex. App.
LEXIS 6588, at *8 (Tex. App.—Amarillo Sept. 28, 2001, no pet.) (not designated for publication). 
The trial court's words, whether spoken or written, must evince a present, as opposed to future, act
that effectively decides the issues before the court. Woods v. Woods, 167 S.W.3d 932, 933 (Tex.
App.—Amarillo 2005, no pet.). Compare Hubbard, 21 S.W.3d at 561 (judge's statement he was
"going to grant the divorce" once the final decree was on his desk did not suffice as a rendering),
with Baize v. Baize, 93 S.W.3d 197, 200 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)
(judge's statement "I'll grant your divorce today" was found to be sufficient rendition of judgment). 
Whether a particular action constitutes a rendition of judgment is a question of fact. Bockemehl v.
Bockemehl, 604 S.W.2d 466, 469 (Tex. Civ. App.—Dallas 1980, no writ).
            In this case, the words granting a divorce are undeniably there. Belinda argues the trial court
did not render judgment, did not pronounce officially that it had made a legal determination as to the
divorce, and did not use the word "render." The statement by the trial court was made in open court
while officiating as the presiding judge after all evidence had been presented and in the presence of
all parties and attorneys. During the process of ruling on some rings and other personal property
items, the court recognized that Thomas acknowledged a gift of a diamond ring to his son because
he knew that was his (Thomas') mother's wish; however, he did not recognize a similar gift of a ring
to his daughter because he did not hear his mother make such a statement. The court then stated, 
There is evidence, and, you know, probably credible evidence that your mother made
a similar statement in regard to this lady's ring, broach, and broach guard, in regard
to your daughter, but since you didn't hear it yourself, you've elected not to make
yourself a gift of these items to your daughter. And that's your prerogative. You
have every legal right to do so. And it may be that – - your divorce is granted– - so
I'll now say– your former wife has made all this up.

We interpret that as a clear statement granting the divorce. The trial court then referred to Belinda
as "your former wife." Belinda argues that the court said only that it "may be" that "your divorce is
granted." However, from the context it is clear that the "may be" language refers to the possibility
"it may be that" his "former wife" had fabricated the story about his mother's desire to give the
daughter the ring. The present intent to grant a divorce by oral pronouncement is clear to us. 
            Moreover, the trial court's word choice throughout the hearing manifested intent this would
be the last time these parties would argue as husband and wife. The trial court started the hearing
by stating it was the court's understanding that almost everything had been settled and that there were
only a handful of matters the court needed to decide.


 Later, the trial court requested clarification
as to what was in contention, and thus before the court, as opposed to matters that had already been
decided in the parties' mediated settlement agreement. 
            Perhaps the most telling were the trial court's comments at the close of arguments. The court
started its ruling by simply stating:
I'll tell you what I'm going to do. I'm going to rule, and then I'll allow y'all to make
of record your exceptions to my rulings. And in so doing, you can ask for a, I guess
in effect, a judgment N.O.V., a motion for rehearing, or whatever you want to call it,
and tell me why you are entitled to it.

This statement denoted clear, present intent; the judge was going to rule immediately and when the
ruling was complete, he was going to ask for exceptions. He went on to state how each piece of
disputed property was to be divided and then asked for exceptions. The comment that exceptions
should be made in the form of a judgment N.O.V. or motion for rehearing adds depth to this
statement, since these motions are only made after final judgment has been rendered. Further, the
trial court closed the ruling with a simple, "So it's yours, and I'm so finding. And that's my ruling." 
In light of the tone of the court throughout the day, the language "your divorce is granted" expressed
present intent to render judgment.
            As is often the case, it is this Court's duty to take words written on a page and decipher their
precise meaning. However, in this case there is some assistance from the speaker. The trial court's 
final decree from June 28, 2004, listed the date of judgment for the divorce as July 2, 2003. While
Belinda properly points out that this is not dispositive,


 it is merely additional information this Court
can use to decipher the trial court's intention on July 2, 2003. No matter which parts of the hearing
this Court points to as present intent to render judgment, there is ample evidence the court had more
than mere cognition to render a judgment on July 2, 2003.
            b.         Division of Property
             A judgment is final only when it disposes of all issues before it and settles the controversy
between the parties, although further proceedings may be required to carry the judgment into effect. 
R.R. Comm'n of Tex. v. Home Transp. Co., 654 S.W.2d 432, 434 (Tex. 1983). Belinda contends that
the court did not render judgment on the property and custody issues and that this omission is fatal
to any potential oral decree of divorce. Belinda further asserts the trial court did not officially rule
on any of the property, and therefore the court, inadvertently, severed the divorce from the property,
which it cannot do. See Herschberg v. Herschberg, 994 S.W.2d 273, 277 (Tex. App.—Corpus
Christi 1999, no pet.). 
                        i.         Disputed Property 
            The "final hearing" was conducted because there were a few items of property not included
in the mediated settlement agreement, of which the court needed to make a just and right division. 
Thomas provided the court with a list of the five items in controversy: (1) ring, broach and broach
guard; (2) large diamond; (3) baseballs; (4) two watches; and (5) pearls. This list was fortified when
Belinda was prevented from discussing a tennis bracelet that was not on the list, and thus not at issue
before the court. The court clearly and explicitly decided who would have ownership of each of
these items. The disputed property was undeniably settled in this hearing and therefore not severed
from the divorce.
                        ii.        Settlement Agreement
            Keeping in mind a written decree is merely a ministerial act once an oral decree has been
pronounced, we move to the issue of the mediated settlement agreement (Agreement). The
Agreement was formed under Sections 6.602 and 153.0071 of the Texas Family Code.


 See Tex.
Fam. Code Ann. §§ 6.602, 153.0071 (Vernon Supp. 2005). By satisfying the requirements of these
sections, all parties are bound to the agreement and are entitled to a judgment on the agreement. 
Tex. Fam. Code Ann. § 6.602(b), (c); see also Cayan v. Cayan, 38 S.W.3d 161, 165 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied). Compliance with Section 6.602 makes the
agreement an exception to Sections 7.001 and 7.006, which allow revision and repudiation of
settlement agreements. Tex. Fam. Code Ann. §§ 7.001, 7.006 (Vernon 1998); Cayan, 38 S.W.3d
at 165. Via Section 6.602, the parties elect to make their agreement binding at the time of execution
rather than at the time of rendering, thus creating a procedural shortcut for the enforcement of those
agreements. Cayan, 38 S.W.3d at 165–66. Additionally, a Section 6.602 agreement may be ruled
on without a determination by the trial court that the terms of the agreement are just and right. Id.
at 166. After all, the purpose of mediation is to let parties settle their property as they see fit, keeping
those matters out of the courtroom. Id. 
                        a) Parties Were Bound to the Agreement
            The Agreement was binding on the parties as of April 7, 2003, because it (1) prominently
displayed a statement in boldface, underlined, capital letters that the agreement was not subject to
revocation, (2) was signed by both parties to the agreement, and (3) was signed by the parties'
attorneys. See Tex. Fam. Code Ann. § 6.602(b). By meeting the requirements of Section 6.602,
the Agreement became more binding than a basic written contract; nothing either party could have
done would have modified or voided the Agreement once everyone had signed it. Cayan, 38 S.W.3d
at 165–66. While Section 6.602 cannot be imposed on the parties, once affirmative steps are taken
to comply with that section, neither party can repudiate the agreement. Id. at 166. 
            Further, Belinda and Thomas both asked the court to accept the Agreement. Once a party
asks the court to accept a settlement agreement and render judgment, they may not later attack that
judgment. Mailhot v. Mailhot, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.). 
Belinda and Thomas were not trying to find a way to avoid the Agreement, but rather taking one
more step to ensure its enforcement. The binding nature of the Agreement should be no surprise to
either party, since the language throughout the Agreement clearly indicated intent of finality. 
Primarily, paragraph 21 contained the explicit language which caused the Agreement to fall under
Section 6.602.


 Both of the parties' attorneys signed the Agreement and should have recognized the
repercussions of the inclusion of that section of the Texas Family Code. The Agreement further
provided:
The parties agree that this Mediated Settlement Agreement is effective immediately. 
 
. . . .
 
2. Scope of the Agreement
The parties agree to settle all claims and controversies between them, asserted
or assertable, in this case. 
 
. . . .
 
15. Release
Each party releases the other from all claims, demands, and causes of action
each may have against the other, save and except those covenants, duties, and
obligations set forth in this agreement.
 
16. Full Disclosure
Each party represents that he or she has made a fair and reasonable disclosure
to the other of the property and financial obligations known to him or her.
 
17. Final Documents
1. The terms of this agreement will be incorporated in a decree that will
follow the forms published in the Texas Family Law Practice Manual (2d ed.). 
 
. . . .
 
20. Court Appearance
The parties agree to appear in court at the first available date to present
evidence and secure rendition of judgment in accordance with this agreement. 

Last, it should be reiterated that the court ruled and then asked for exceptions. While Belinda asked
for clarification on one piece of disputed property, no comment was made regarding the Agreement
on which they had both requested the court to rule. Everyone involved recognized the binding nature
of the Agreement, and no one objected to or questioned its enforceability.
                        b) Parties Were Entitled to Judgment
            Not only was there nothing the parties could do to void or modify the Agreement once it had
been signed, there was also little to nothing the trial court could do in regard to the Agreement. 
Section 6.602(c) states, "If a mediation settlement agreement meets the requirements of this section,
a party is entitled to a judgment on the mediated settlement agreement notwithstanding Rule 11,
Texas Rules of Civil Procedure, or another rule of law." Tex. Fam. Code Ann. § 6.602(c) (emphasis
added). The statute requires the trial court to render judgment on a Section 6.602 agreement, even
if one party attempts to withdraw consent. In re Circone, 122 S.W.3d 403, 406–07 (Tex.
App.—Texarkana 2003, no pet.); Alvarez v. Reiser, 958 S.W.2d 232, 234 (Tex. App.—Eastland
1997, pet. denied).
            Section 6.602 does not authorize the trial court to substitute its judgment for the mediated
settlement agreement entered by the parties if the mediation agreement complies with the statutory
requirements making it irrevocable and granting the parties the entitlement to a judgment thereon. 
A trial court is not required to enforce a mediated settlement agreement if it is illegal in nature or was
procured by fraud, duress, coercion, or other dishonest means. Boyd v. Boyd, 67 S.W.3d 398, 403
(Tex. App.—Fort Worth 2002, no pet.); see also In re Kasschau, 11 S.W.3d 305, 314 (Tex. App.—
Houston [14th Dist.] 1999, no pet.) (mediated settlement agreement voided for requiring the criminal
act of destruction of evidence). The court is not allowed to modify Section 6.602 agreements as it
sees fit, and it has no authority to enter a judgment that varies from their terms. Circone, 122
S.W.3d at 406; Garcia-Udall v. Udall, 141 S.W.3d 323, 330 (Tex. App.—Dallas 2004, no pet.). 
Here, no one urged that the mediated settlement agreement was illegal or was procured by fraud,
duress, coercion, or other dishonest means. To the contrary, both parties requested that the trial court
approve the agreement. 
            Section 6.602 has been classified as a "procedural shortcut" for enforcement of mediated
settlement agreements in divorce cases. Cayan, 38 S.W.3d at 166. It contrasts with agreements
incident to divorce in that the mediated agreement is binding and irrevocable at the time of its
execution rather than at the time divorce is rendered, the parties are entitled to judgment on it, and 
the trial court does not have to determine that it is "just and right." Id. at 164–66. The mediated
settlement agreement places this case in a different posture than those cases in which an agreement
incident to divorce in accordance with Section 7.006 of the Texas Family Code was presented
without objection, because in such cases (not based on mediation), the trial court was required to
examine the agreement to determine if it was "just and right" before approving the agreement.


 Here,
the parties were entitled to a judgment incorporating the provisions of the mediated settlement
agreement and, since no allegation was presented that the agreement was illegal, or procured by
fraud, duress, or coercion, and there is no indication the trial court sua sponte questioned the legality
of the agreement, the trial court was required to enter a judgment based on the mediated agreement. 
Considering the hearing's tone of finality, the lack of any argument concerning the agreement's
illegality, the limited actions the court could have taken on the matter, and this State's policy of
encouraging alternative dispute resolution with "special consideration" given to disputes involving
parent-child relationships (see Tex. Civ. Prac. & Rem. Code Ann. § 154.002 (Vernon 2005)),
allowing the absence of a specific statement rendering judgment on this binding Agreement to void
the divorce is unwarranted. We hold that the judgment granting the divorce was rendered July 2,
2003, and since the trial court had no authority (absent an issue on illegality, duress, etc. raised either
by the parties or the court sua sponte) to do otherwise, the mediated settlement agreement was a part
of the divorce rendition. 
                        c) The Custody Portion of the Mediated Settlement Agreement
            The Joyners and their attorneys entered a mediated settlement agreement which addressed
property issues as well as child conservatorship, possession and access, and child support. As
explained earlier, two statutes exist governing mediated settlement agreements—Section 6.602 for
property matters and Section 153.0071 for child conservatorship. The wording of the statutes is
identical as to the requirements for entering an irrevocable, immediately binding agreement. Before
June 18, 2005, there was no provision requiring the trial court to conduct an evidentiary hearing to
determine if the agreement entered into by the parties was in the child's best interest. The Dallas
Court of Appeals has held that a trial court had no authority to enter a judgment, regarding
conservatorship, that varied from the terms of the mediated settlement agreement and to do so was
an abuse of discretion. Garcia-Udall, 141 S.W.3d at 331–32. The Garcia court noted that the trial
court made no findings that the agreement was illegal or violated public policy. Id. at 332. The
Houston First Court of Appeals has held that the trial court may, but is not required to conduct an
evidentiary hearing to determine whether the parents' custody mediated agreement is in the best
interest of the child. Beyers v. Roberts, No. 01-04-00619-CV, 2006 Tex. App. LEXIS 3511, at *11
(Tex. App.—Houston [1st Dist.] Apr. 27, 2006, no pet. h.). ("Nothing in the statute requires that a
trial court conduct a best interest hearing before entering an order pursuant to a mediated settlement
agreement. . . . Furthermore, nothing in the common law creates a duty to determine best interest
in every case in which the parents have reached a settlement of their custody disputes."). Here, the
parties both testified the agreement was in the child's best interest, neither filed any motion
contesting the agreement on any basis, and the trial court did not sua sponte find the agreement to
be illegal or void for public policy reasons such as being contrary to the child's best interest. We
note that the Legislature has now amended Section 153.0071 authorizing a trial court to decline to
enforce a mediated settlement agreement if it finds the agreement is not in the child's best interest. 
See Tex. Fam. Code Ann. § 153.0071(e-1)(2). However, the judgment in this case was signed June
28, 2004, and the amendment to the statute does not apply. As in Garcia, the trial court was required
to enter judgment on the mediated settlement agreement. Therefore, when the trial court announced
it was granting the divorce judgment, the mediated settlement agreement was incorporated as a part
of the judgment. 
IV. Conclusion
            Once a couple is divorced, they can no longer accumulate community property, for there is
no longer a community. By looking at the record of the hearing in its entirety, we conclude the trial
court rendered an oral pronouncement granting a judgment of divorce which necessarily 
incorporated the terms of the binding mediated settlement agreement. The judgment of the trial court
is affirmed. 
 
                                                                                    Jack Carter
                                                                                    Justice

Date Submitted:          June 14, 2006
Date Decided:             June 30, 2006