# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-10-00359-CV

**Jacqueline Kay Koelm, Appellant**

**v.**

**William Walter Koelm, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
### NO. D-1-FM-09-002049, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellant Jacqueline Kay Koelm appeals from the district court's final divorce decree, which incorporated the terms of a mediated settlement agreement between Jacqueline and appellee William (Bill) Walter Koelm.[1] In three issues, Jacqueline complains that the district court erred in entering the decree pursuant to an arbitration award without an arbitration hearing, over Jacqueline's objection and without her signature, and without effecting a just and right property division pursuant to section 7.001 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 7.001 (West 2006). For the reasons that follow, we affirm the district court's final decree.

---

[1] For convenience and clarity, we refer to the parties by their first names.

**FACTUAL AND PROCEDURAL BACKGROUND**

Jacqueline and Bill were married in February 2007. In April 2009, Jacqueline filed for divorce. In July 2009, Jacqueline and Bill entered into a mediated settlement agreement pursuant to section 6.602 of the family code. *See id.* § 6.602 (West 2006). The mediated settlement agreement states on the first page: "**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION.**" Exhibit A to the agreement further provides, in relevant part:

> 1. Allergan 401(k) value as of 7/10/09 will be split 50/50, subject to Wife's extinguishing the approximately $12,000 debt on the Toyota [S]equoia by 8/31/09 and presenting written proof that the debt is no longer in Husband's name. If Wife does not extinguish the debt by 8/31/09, then Wife's one-half of the 401(k) will be awarded to Husband.

> 2. Allergan bonus expected by 7/31/09 divided 50/50, Wife's half subject to her extinguishing the Toyota [S]equoia debt as described above. Wife's half will be held in her attorney's trust account. If Wife does not extinguish the debt by 8/31/09, then Wife's one-half of the bonus will be awarded to Husband.

> . . . .

> 12. In the event of any dispute about the intent of this agreement or the drafting of the decree, the dispute will be resolved by binding arbitration before Patrick Keel. [Bill's attorney] will prepare draft for approval by [Jacqueline's attorney].[**2**]

Bill's attorney prepared a draft final decree and submitted it to Jacqueline's attorney for approval in August 2009. Disputes subsequently arose between the parties concerning the intent

---

**2** Section 6.601(a) of the Texas Family Code provides that on written agreement of the parties, a court may refer a suit for dissolution of a marriage to arbitration and that the agreement must state whether arbitration is binding or nonbinding. *See* Tex. Fam. Code Ann. § 6.601 (West 2006).

of the agreement and the wording of the draft final decree, centering around Jacqueline's obligation to extinguish the debt on the Toyota Sequoia, which Jacqueline failed to perform. Jacqueline contended that it was the intent of the agreement that she extinguish the debt using funds from her share of the Allergan bonus and because Bill had not transmitted the bonus money to her attorney's trust account, she was unable to fulfill her part of the agreement. To resolve the dispute, in accordance with paragraph 12 of the agreement and section 6.601(a) of the family code, *see* Tex. Fam. Code Ann. § 6.601(a) (West 2006), both parties sent written submissions to the selected arbitrator. Bill's submission included a copy of the disputed draft final decree. In September 2009, the mediator rendered his decision and issued an arbitration award, concluding that the draft final decree submitted by Bill's attorney reflected the parties' agreement as set out in the mediated settlement agreement. A copy of the draft final decree was attached as an exhibit to the arbitration award.

Following the arbitration award, Jacqueline refused to sign the final decree. In October 2009, Bill filed a motion requesting that the district court sign the decree in the form attached to the arbitration award. Jacqueline filed objections to the proposed final decree, asserting three grounds: (1) it included terms not negotiated in mediation and not included in the mediated settlement agreement; (2) it contained a division of property that was not just and right; and (3) Bill had failed to perform his obligations under the terms of the mediated settlement agreement, making it impossible for Jacqueline to perform her obligations.

In November 2009, the district court signed the Agreed Final Decree of Divorce in the form attached to the arbitration award. Although the decree was in the form prepared pursuant

3

to the settlement agreement and was titled "agreed," neither the parties nor their attorneys signed it. Jacqueline filed a motion for new trial based on essentially the same three grounds urged in her objections. She contended that (1) the decree was not agreed, as evidenced by the absence of her signature and that of her attorney; (2) the property division was not just and right; and (3) the decree was based on an unconscionable mediated settlement agreement because Bill had failed to perform his obligations under the agreement. Her motion was overruled by operation of law, and this appeal followed.

## ANALYSIS

Some of the claims before us involve matters of statutory interpretation, which we review de novo. *See Texas Mun. Power Agency v. Public Util. Comm'n*, 253 S.W.3d 184, 192 (Tex. 2007). Of primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). We consider the entire act, not isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

### Arbitration Award

In her first issue, Jacqueline complains that the district court erred in entering a final decree based on the arbitration award without holding or requiring a "formal arbitration hearing." She contends that sections 171.044 and 171.047 of the Texas Civil Practice and Remedies Code

4

afford parties to arbitration the right to receive notice, be heard, present evidence, and cross-examine witnesses—rights that she and Bill did not waive in the mediated settlement agreement. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 171.044, .047 (West 2005). Bill contends that Jacqueline has failed to preserve error on this issue. We agree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, unless they are apparent from the context of the pleading. Tex. R. Civ. P. 33.1; *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991); *In re A.D.A.*, 287 S.W.3d 382, 388 (Tex. App.—Texarkana 2009, no pet). Jacqueline participated in the arbitration by sending a written submission to the arbitrator without objecting to the lack of a formal hearing or requesting one. She did not raise this complaint either in the form of objections to the entry of the decree or in her motion for new trial. Instead, Jacqueline raises the issue of a formal arbitration hearing for the first time before this Court on appeal. Having failed to raise this issue in the district court, Jacqueline has waived it. We overrule Jacqueline's first issue.

**Entry of Agreed Divorce Decree**

In her second issue, Jacqueline argues that the trial court erred in entering an "Agreed Decree of Divorce" without her signature and over her objections. In support of this argument, she contends that a determination of the force and effect of a divorce decree based on the agreement of the parties is governed by the law of contracts. According to Jacqueline, there was no meeting of the minds with regard to the agreement, and without this essential element of a contract, the agreement was unenforceable.

A mediated settlement in a suit for dissolution of a marriage, however, is governed by section 6.602 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 6.602; *see generally id.* §§ 6.001-.802 (West 2006 & Supp. 2010). Section 6.602 provides in relevant part:

> (b) A mediated settlement agreement is binding on the parties if the agreement:
>
>> (1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;
>>
>> (2) is signed by each party to the agreement; and
>>
>> (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.
>
> (c) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

*Id.* § 6.602.

The plain language of section 6.602 is clear: A mediated settlement agreement that meets the requirements of section 6.602 is binding, *i.e.*, irrevocable, and a party to one is entitled to judgment based on the agreement. *See Brooks v. Brooks*, 257 S.W.3d 418, 422 (Tex. App.—Fort Worth 2008, pet. denied); *Cayan v. Cayan*, 38 S.W.3d 161, 165 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). As one of our sister courts explained, a mediated settlement agreement under section 6.602 is "more binding than a basic written contract" because nothing either party does will modify or void the agreement "once everyone has signed it." *In re Joyner*, 196 S.W.3d 883, 888 (Tex. App.—Texarkana 2006, pet. denied). "Unilateral withdrawal of consent

6

does not negate the enforceability of a mediated settlement agreement in divorce proceedings." *Mullins v. Mullins*, 202 S.W.3d 869, 876 (Tex. App.—Dallas 2006, pet. denied) (citation omitted).[3]

In this case, the settlement agreement meets the requirements of section 6.602(b). The record shows that there is a prominent notice on the first page of the agreement that it is not subject to revocation, and the agreement is signed by Jacqueline, Bill, and their attorneys. Although Jacqueline later disputed the meaning of the terms of the settlement as stated in the draft divorce decree, the settlement agreement required the parties to submit their dispute to binding arbitration. Once the arbitrator determined that the draft decree reflected the parties' agreement as stated in the mediated settlement agreement and filed the arbitration award, the parties were bound, and Bill was entitled to the entry of a decree incorporating the terms stated in the settlement agreement. *See* Tex. Fam. Code Ann. §§ 6.601(b) (West 2006) (if parties agree to binding arbitration, court shall render order reflecting arbitrator's award), 6.602(c); *Brooks*, 257 S.W.3d at 422; *Cayan*, 38 S.W.3d at 165.

---

[3] In contrast to section 6.602, section 154.071(a) of the Texas Civil Practice and Remedies Code provides that a written settlement agreement is enforceable in the same manner as any other written contract. Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a) (West 2005); *Boyd v. Boyd*, 67 S.W.3d 398, 402 (Tex. App.—Fort Worth 2002, no pet.). Section 154.071 further provides that the court has *discretion* to incorporate the terms of the agreement in its final decree disposing of the case. Tex. Civ. Prac. & Rem. Code Ann. § 154.071(b) (emphasis added). We presume that when the Legislature enacted section 6.602 in 1997, *see* Act of Apr. 11, 1997, 75th Leg., R. S., ch. 7, § 1, 1997 Tex. Gen. Laws 8, 31-32, it did so with the knowledge of section 154.071, which was enacted in 1987. *See* Act of June 1, 1987, 70th Leg., R. S., ch. 1121, § 1, 3841, 3843-44; *see also Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) (courts presume statutes enacted with complete knowledge of existing law and with reference to it); *Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same). "To adopt [Jacqueline's] contention that section 6.602 agreements are only enforceable in the same manner as other contracts would render section 6.602 meaningless relative to section 154.071 and thus treat its enactment as a useless act." *Cayan*, 38 S.W.3d at 166. We do not lightly presume that in enacting a statute, the Legislature may have done a useless act*. Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 637 (Tex. 2010).

Because the agreement complied with section 6.602, and because the arbitrator upheld it, Jacqueline's unilateral attempt to revoke the settlement agreement was ineffective, and both sections 6.601(b) and 6.602(c) required the district court to enter judgment on it despite Jacqueline's attempted repudiation. *See* Tex. Fam. Code Ann. § 6.602(b), (c); *Mullins*, 202 S.W.3d at 876; *Cayan*, 38 S.W.3d at 165.

Jacqueline argues that the settlement agreement should not be enforced because Bill committed fraud. The alleged fraud is that he represented that he would transfer the Allergan bonus money to her attorney's trust account but failed to do so. Although a party is entitled to judgment on a mediated settlement agreement that meets the requirements of section 6.602 "notwithstanding rule 11 . . . or another rule of law," *see* Tex. Fam. Code Ann. § 6.602(c), we agree that section 6.602 does not require a court to enforce a settlement agreement that was fraudulently procured. *See Brooks*, 257 S.W.3d at 422; *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.). As the court in *Boyd* observed:

> [C]onstruing the phrase "notwithstanding rule 11 or another rule of law" to mean that a mediated settlement agreement that complies with section 6.002(b) must be enforced no matter what the circumstances could require enforcement of an agreement that was illegal or that was procured by fraud, duress, coercion, or other dishonest means.

67 S.W.3d at 403. We do not believe the legislature intended such a result. *See id.*; *Marks*, 319 S.W.3d at 663. Therefore, if Bill obtained Jacqueline's participation in the mediated settlement agreement by fraud, we would conclude that it is unenforceable. *See Boyd*, 67 S.W.3d at 403.

The record shows, however, that Jacqueline failed to urge this argument in her objections to the entry of the decree and her motion for new trial and has therefore waived it. *See* Tex. R. Civ. P. 33.1; *Bushell*, 803 S.W.2d at 712; *In re A.D.A.*, 287 S.W.3d at 388. Even had Jacqueline not waived her fraud claim, the record is silent on the issue of whether and, if so, under what circumstances Bill failed to transmit the funds, and thus there is no evidence to support a claim for fraud. We overrule Jacqueline's second issue.

**Just and Right Division of Property**

In her third issue, Jacqueline contends that the final decree is not a just and right property division as required by section 7.001 of the family code. *See* Tex. Fam. Code Ann. § 7.001. Section 7.001 provides that in a divorce proceeding, "the court shall order a division of the estate of the parties in a manner that the court deems just and right . . . ." *Id.* Because the decree was entered into pursuant to a section 6.602 mediated settlement agreement, however, section 7.001 does not apply. *Cayan*, 38 S.W.3d at 166 (section 6.602 is exception to section 7.001 in allowing judgment to be entered without determination by trial court that terms of agreement are just and right); *Kott v. Kott*, No. 03-06-00398-CV, 2008 Tex. App. LEXIS 1464, at *3 (Tex. App.—Austin Feb. 29, 2008, no pet.) (mem. op.) (section 6.602 agreements are immediately enforceable and are binding on court without condition of judicial approval or determination that terms are just and right).

Rather, the language of section 6.602 reflects that the Legislature deliberately created a procedural shortcut for enforcement of mediated settlement agreements in divorce cases. *Brooks*, 257 S.W.3d at 422; *Cayan*, 38 S.W.3d at 166. A section 6.602 settlement agreement

9

is binding and immediately enforceable, and the district court was not required to make a determination of whether the property division was just and right.  *Cayan*, 38 S.W.3d at 166; *Kott*, 2008 Tex. App. LEXIS 1464, at *3.  We overrule Jacqueline's third issue.

## CONCLUSION

Having overruled Jacqueline's issues, we affirm the district court's final divorce decree.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   June 2, 2011

10