

NUMBER 13-11-00779-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

YVONNE BRACAMONTES,                                                                 Appellant,

v.

FRANCISCO BRACAMONTES,                                                            Appellee.

## On appeal from the County Court at Law No. 4
## of Hidalgo County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Benavides**

In this divorce case, appellant Yvonne Bracamontes asserts that the trial court

erred by failing to enter judgment on her and her ex-husband's, appellee Francisco

Bracamontes's, mediated settlement agreement.   Specifically, Yvonne argues that the

trial court erred in determining that the language in the parties' mediated settlement agreement: (1) only required Francisco to pledge his hospital stock up to the amount of his debt to Yvonne; (2) required the parties to split the cost of health insurance and unreimbursed medical expenses for their two children; and (3) required Yvonne to pay her taxes with her own funds and not with the funds from the former couple's joint tax account. We reverse and remand.

## I. BACKGROUND

Yvonne and Francisco were married on June 25, 1993. On August 5, 2009, Yvonne filed for divorce from Francisco. At the time the divorce was sought, both parties were physicians who owned stock in Doctors Hospital at Renaissance (DHR), a physician-owned hospital facility located in Edinburg, Texas.

Yvonne sought temporary orders concerning the couples' two children and their community property. On September 2, 2009, the trial court ordered the following, among other things, with regard to the children:

(1) Yvonne and Francisco were joint managing conservators of the children, with Yvonne maintaining the exclusive right to establish the children's primary residence in Hidalgo County, Texas;

(2) During the school year, the children would stay with Yvonne for eight consecutive evenings and then with Francisco for six consecutive evenings, with vacation time to be divided equally;

(3) Francisco would pay $3,000 monthly in child support to Yvonne; and

(4) Francisco would maintain the children on his health insurance policy, as well as on the medical savings accounts.

2

After the temporary orders were in place, Francisco filed an answer and counter-petition on September 9, 2009. On April 1, 2011, the parties went to mediation. After a two-day mediation, at which both parties were represented by counsel, the parties agreed to certain terms. The pertinent provisions, for the purpose of this opinion, are set forth below:

(1) [Francisco] shall buy out [Yvonne's] net interest and [Yvonne] shall buy out the [Francisco's] net interest in their respective DHR stock. After offsets, [Francisco] shall pay [Yvonne] $1.4 million dollars as follows:

1. $300,000 cash at closing;

2. 1.1 million will be financed by [Yvonne] ("Debt"), payable as follows:

a. Security. The Debt shall be secured by all community assets including [Francisco's] DHR stock.

b. Interest. The Debt shall accrue simple interest at 3% per annum.

c. Maturity. The Debt shall mature and be payable in full on the 5th anniversary of closing.

. . . .

(14) Each PA[1] shall pay their own 2010 taxes and 2011 taxes prorated through the date of divorce. Except that the money in the tax account shall be used to pay the taxes which will be due from the distributions/dividends generated from the DHR shares.

. . . .

---

[1] Yvonne's attorney clarified on the record that "PA" refers to a "professional association." As physicians, Yvonne and Francisco maintained separate "PA's" or medical offices.

3

(16) The provisions for conservatorship, possession, geographic restriction and child support as set forth in the Temporary Orders dated September 2, 2009 shall be included in the final decree.

Importantly, the last clause of the agreement had the following language in all capital letters and in bold print: "THIS MEDIATED SETTLEMENT AGREEMENT IS NOT SUBJECT TO REVOCATION. A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT ON THIS AGREEMENT." The agreement was signed by both Yvonne and Francisco and their respective attorneys.

On August 29, 2011, the parties appeared before the trial court for a final hearing on the divorce and entry of a decree. At that time, Francisco represented that the parties would need help clarifying certain issues "that either didn't come up during the mediation . . . or perhaps they were, and we have different interpretations of what's in black and white." The three issues that are the subject of this appeal are: (1) the amount of collateral for Francisco's $1.4 million note to Yvonne, (2) who would pay for the children's health insurance, and (3) access to the tax account.

Regarding the collateral, the mediated settlement agreement set forth that "[Francisco's] [d]ebt [to Yvonne] shall be secured by all community assets including [Francisco's] DHR stock." Francisco argued that this provision should be interpreted as meaning that only stock up to the amount of his debt to Yvonne should be held as collateral, not all of the stock. Francisco's attorney explained as follows:

The interpretation that they're trying to make of the mediated settlement agreement is completely unreasonable. What is normal and customary is that when you go and get a loan, you secure it adequately. It doesn't mean you secure it with everything you have . . . [Francisco] needs the ability to make moves and respond. Maybe he needs to borrow money to

4

pay taxes, maybe he needs to borrow money to put his children through school . . . and we're kind of going, 'Um man, I really wish we hadn't agreed to that, because the first time one of [Francisco and Yvonne's] properties sell, then [Francisco is] going to have a tax liability, a capital gain on that that we didn't reserve for, and—because we got to use all the money to apply it against the note. And so that's another example of why we may need some of this DHR stock.

Yvonne's attorney responded that the nature of stock market shares, particularly in the health care industry, is volatile. For that reason, Yvonne intentionally bargained for all of Francisco's stock to be used as collateral because the value of that stock was unpredictable.

With respect to the children's health insurance, under the temporary orders, Francisco was required to pay the children's health care insurance premiums. At the final hearing, Francisco stated that he would only continue to do so if he was allowed to count the children as tax deductions in his annual income taxes. Otherwise, Francisco wanted to split the health insurance and any additional medical costs not covered by insurance with Yvonne. Yvonne countered that, as the possessory parent, federal income tax law allowed her to claim the children for deductions.[2] She also noted that Francisco willingly signed the mediated settlement agreement stating that the temporary orders, which covered the children's health insurance, would be adopted into the divorce decree.

On the topic of the tax account, Francisco argued that the "tax account" was actually a bank account under his name. He contended that he was prudent enough to

---

[2] *See* 26 U.S.C.A. § 152(c)(4)(B) (2008).

save for the taxes on the income from his DHR shares, so he should be able to recoup the benefits from that planning. Yvonne's attorney responded as follows:

> It very clearly says that [']except that the money in the tax account shall be used to pay taxes that will be due from the distribution dividends generated from the DHR shares[']. . . We contracted in the mediation agreement that those tax accounts would be divided prorated depending on the DHR shares, the total DHR shares. We didn't specify his DHR shares. We would have specified his DHR shares if he was going to get it, but we said DHR shares. So we're asking that the Court prorate it between his shares and her shares, because the money that was in those accounts were as of the date of the mediation. It was all community assets.

The trial court ultimately granted the Bracamontes divorce that day, but took these matters under advisement.[3]

On September 20, 2011, the trial court issued a written order on the disputed issues. With respect to the DHR stock, the trial court ordered that Francisco "be allowed to post enough security (not all security) to cover the promissory note." Regarding the children's health insurance, Yvonne was ordered "to pay half of the children's health insurance and half of all current child expenses which exceed the child support payments." Finally, the court ruled that Yvonne was "not entitled to any money from [Francisco's] bank account known as the tax account." Yvonne appealed.

## II. APPLICABLE LAW

"Texas has a public policy of encouraging the peaceful resolution of disputes, particularly those involving the parent-child relationship, and the early settlement of

---

[3] The trial court took other matters under advisement, as well, such as the payment of vacation expenses and which parent would have access to the children's passports. Those matters, however, were not appealed and are not before this Court.

6

pending litigation through voluntary settlement procedures." *Boyd v. Boyd*, 67 S.W.3d 398, 402 (Tex. App.—Fort Worth 2002, no pet.). Texas Family Code section 6.602 governs mediated settlement agreements incident to divorce:

(a) A mediated settlement agreement is binding on the parties if the agreement:

(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation;

(2) is signed by each party to the agreement; and

(3) is signed by the party's attorney, if any, who is present at the time the agreement is signed.

(b) If a mediated settlement agreement meets the requirements of this section, a party is entitled to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law.

TEX. FAM. CODE ANN. § 6.602 (West 2006).

A party to a mediated settlement agreement meeting the requirements of section 6.602 is entitled to judgment on the agreement. *Boyd*, 67 S.W.3d at 402; *see Herszage v. Herszage*, 13-06-257-CV, 2007 Tex. App. LEXIS 6548, at *13 (Tex. App.—Corpus Christi Aug. 16, 2007, no pet.) (mem. op.) ("An agreement pursuant to section 6.602 of the Texas Family Code is wholly different than a typical agreement incident to divorce; an agreement under 6.602 cannot be revoked before judgment. . . ."). In construing the language of section 6.602, "we presume the Legislature intended the plain meaning of its words." *Cayan v. Cayan*, 38 S.W.3d 161, 165 (Tex. App.—Houston [14th Dist.] 2000,

7

no pet.) (citing *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527 (Tex. 2000)). "The plain meaning of section 6.602 could hardly be more clear:  a section 6.602 agreement is binding, *i.e.*, irrevocable, and a party to one is entitled to judgment based on the agreement."  *Id.*

"An agreement that meets the requirements of section 6.602 is 'more binding than a basic written contract.'"  *In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied).  However, a trial court need not enforce a mediated settlement agreement "if it is illegal in nature or was procured by fraud, duress, coercion, or other dishonest means."  *Id.* at 890.

"Whether a contract is ambiguous is a question of law for the court to decide." *Lopez v. Munoz, Hockema & Reed*, 22 S.W.3d 857, 861 (Tex. 2000) (citing *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980).  "In construing contracts, we must ascertain and give effect to the parties' intentions as expressed in the document." *Id.*   "A contract is not ambiguous if it can be given a certain or definite legal meaning or interpretation." *Id.* (citing *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996)).

### III.   ANALYSIS

#### A.   The DHR Stock Pledge

By her first issue, Yvonne argues that the trial court erred when it only required Francisco to pledge his hospital stock up to the amount of his debt to Yvonne.  The language from the mediated settlement agreement states as follows:   "the Debt shall be secured by all community assets including Respondent's DHR stock."

Francisco argues that this language is ambiguous and that, therefore, it was in the trial court's discretion to apply a "more reasonable and customary" interpretation of this contractual term. We disagree. This language is clear and unequivocal—Yvonne's note was secured by "all community assets including [Francisco's] DHR stock." The parties contracted for all of the DHR stock to be held as collateral. This contractual provision "can be given a certain or definite legal meaning or interpretation" and is not ambiguous. *See Lopez*, 22 S.W.3d at 861. When the court ruled that Francisco "be allowed to post enough security (not all security) to cover the promissory note," it changed the meaning of what the parties negotiated after a two-day mediation.[4]

"[T]he purpose of mediation [under section 6.602] is to let parties settle their property as they see fit, keeping those matters out of the courtroom." *See In re Joyner*, 196 S.W.3d at 889; *Cayan*, 38 S.W.3d at 166 (reasoning that the Legislature created a "procedural shortcut" by enacting section 6.602 so that parties could enforce this settlement agreement as soon as it was signed). Here, the trial court unnecessarily interfered in an agreement which the parties had knowledgably negotiated and agreed to with the advice of counsel. Because Francisco does not argue that the mediated settlement agreement was "procured by fraud, duress, coercion, or other dishonest means," Yvonne is entitled to have it entered. *In re Joyner*, 196 S.W.3d at 890.

---

[4] We further note that there is evidence that Francisco drafted the agreement. Texas common law recognizes that agreement should always be construed against the writer. "It is a well-established principle of contract construction . . . that contract language is generally construed strictly against the party who drafted the instrument, since the drafter is responsible for the language." *Gonzalez v. Mission Am. Ins. Co.,* 795 S.W.2d 734, 737 (Tex. 1990). If Francisco only meant to pledge his DHR stock up to the amount of his note to Yvonne, he should have drafted the mediation settlement agreement accordingly.

We sustain Yvonne's first issue.

## B.    The Health Insurance and Unreimbursed Medical Expenses

Yvonne's second issue contends that Francisco should be required to pay the health insurance as he was ordered to in the temporary orders and as he agreed to do as part of the mediated settlement.   The temporary orders provided that:   "The provisions for conservatorship, possession, geographic restriction and child support as set forth in the Temporary Orders dated September 2, 2009 shall be included in the final decree."

Contrary to Francisco's assertions, this provision is clear and unambiguous. "When a contract is unambiguous we will enforce it as written."   *See Lopez*, 22 S.W.3d at 862.   The trial court erred when it ordered Yvonne "to pay half of the children's health insurance and half of all current child expenses which exceed the child support payments" because the parties did not negotiate to split the health insurance and related medical expenses.   In the absence of any claims of fraud, duress, or coercion, *see In re Joyner*, 196 S.W.3d at 890, Yvonne is entitled to have the mediation settlement as negotiated entered into the record.   *See Cayan*, 38 S.W.3d at 165.

We sustain Yvonne's second issue.

## C.    The Tax Fund

By her third issue, Yvonne argues that the trial court erred when it ruled that Yvonne was "not entitled to any money from [Francisco's] bank account known as the tax account."   The mediated settlement agreement specifically stated the following: "Each PA shall pay their own 2010 taxes and 2011 taxes prorated through the date of divorce.   Except that the money in the tax account shall be used to pay the taxes which

10

will be due from the distributions/dividends generated from the DHR shares." The trial court, however, held that Yvonne was "not entitled to any money from [Francisco's] bank account known as the tax account."

Whether a contract is ambiguous is a question of law for a court to determine by examining the contract as a whole in light of the circumstances present when the contract was made. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex. 1983). Again, we hold that the language from the mediated settlement agreement was clear and unambiguous. There is no mention in the mediated settlement agreement that the bank account was under Francisco's name alone. There was no delineation as to whether Francisco or Yvonne's DHR shares would be covered by the monies. These tax accounts were community property at the time of the divorce and were split accordingly. The parties and their attorneys voluntarily agreed to this division, and the trial court had no authority to disturb their agreement. *See Cayan*, 38 S.W.3d at 165 (holding that agreements under section 6.602 are binding and that a party to one is entitled to judgment based on the agreement.). We sustain Yvonne's third issue.

## IV. CONCLUSION

Having sustained all of Yvonne's issues, we reverse the judgment and remand this case to the trial court for proceedings consistent with this opinion.

_____
GINA M. BENAVIDES,
Justice

Delivered and filed the
25th day of July, 2013.

11