**Opinion filed February 4, 2021**



## In The

# Eleventh Court of Appeals

_____

### No. 11-18-00312-CV

_____

### JOY MARAIO-WILHOIT, Appellant

### V.

### RONALD EDWIN WILHOIT, Appellee

---

**On Appeal from the 318th District Court**
**Midland County, Texas**
**Trial Court Cause No. FM 61934**

---

### M E M O R A N D U M   O P I N I O N

Appellant, Joy Maraio-Wilhoit, filed a divorce action against Appellee, Ronald Edwin Wilhoit, in Lubbock County. After this action was transferred to Midland County, the parties attended a mediation conference, settled all pending claims, and executed a Mediated Settlement Agreement (MSA). The trial court signed a final decree that purportedly incorporated the terms of the parties' MSA.

The trial court approved the decree as presented and entered judgment accordingly. On appeal, Appellant raises three issues. She argues that (1) the order transferring venue is void, (2) the associate judge abused his discretion in granting the venue transfer, and (3) the final decree should be vacated because it departs from the terms of the MSA. We modify the final decree and affirm.

## I. *Factual and Procedural Background*

Appellant filed this divorce action in Lubbock County on February 10, 2016. At the time of filing, Appellee was a resident of Midland County. Appellee responded and filed a motion to transfer venue to Midland County. The district court in Lubbock County referred this motion, and others, to an associate judge for determination. After a contested hearing, the associate judge pronounced the granting of Appellee's motion to transfer venue because (1) the evidence did not establish that Appellant intended to be a resident of Lubbock County at the time this divorce action was filed and (2) convenience dictated that Midland County would be a more suitable and convenient forum for the parties to litigate their disputes. On January 31, 2017, the associate judge signed an order granting Appellee's motion and transferring this suit to Midland County.

Appellant filed a timely request for a de novo hearing with the referring court in Lubbock County. A de novo hearing was never held. After this suit was transferred to Midland County, the parties attended mediation. All matters in dispute were resolved, and an irrevocable MSA was executed by the parties and their counsel of record. Appellee submitted a proposed "Agreed Final Decree of Divorce" to the trial court for approval. The proposed decree allegedly incorporated the terms of the parties' MSA. The trial court approved the final decree as presented and entered judgment accordingly. This appeal followed.

II. *Analysis*

*A. The Transfer Order*

In Appellant's first issue, she argues that the order issued by the associate judge transferring this suit from Lubbock County to Midland County is void. A judgment is void only when a court acts without jurisdiction over the parties or the subject matter of the case, without jurisdiction to render a judgment, or without capacity. *State ex rel. Latty v. Owens*, 907 S.W.2d 484, 485 (Tex. 1995) (citing *Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990) (per curiam)). Whether the associate judge in this case had the authority to transfer the suit is a question of law that we review de novo. *Colorado Cty. v. Staff*, 510 S.W.3d 435, 444 (Tex. 2017) (reviewing a question of statutory construction de novo).

Appellant relies on Chapter 201 of the Texas Family Code to support her contention. *See* TEX. FAM. CODE ANN. §§ 201.005, .007, .013, .015 (West 2020). Her reliance is misplaced. That chapter is located in Title 5 of the Family Code, which governs parent–child relationships and suits affecting parent–child relationships. The statutes that relate to the appointment of associate judges in civil cases that do not involve parent–child relationships are found in the Texas Government Code. *See, e.g.*, TEX. GOV'T CODE ANN. §§ 54A.101–.118 (West 2013).

Appellant argues that associate judges have no power to issue rulings with "legal effect." However, the Government Code specifically authorizes an associate judge to rule on pretrial motions in a civil case that are referred to the associate judge. *Id.* § 54A.108(a)(10).

Appellant also asserts that, because a de novo hearing did not occur before the referring court, despite her timely request, the transfer order signed by the associate judge is void because it was not signed and adopted by the referring court. Appellant, however, did not timely request a de novo hearing of the motion to

3

transfer venue. Her request for a de novo hearing related only to "the following issues: Petitioner's Motion for Continuance . . . because the petitioner was without counsel and . . . unqualified to adequately defend the relevant and germane points in this complicated legal case for temporary orders." If a party does not file a timely "appeal" or request for a de novo hearing, the "associate judge's decision has the same force and effect as an order of the referring court." *Id.* § 54A.111(a). Not only must the "appeal" or request for a de novo hearing be timely, it must also specify the matters for which a de novo hearing is requested. *Id.* § 54A.111(e) (de novo hearing "is limited to only those matters specified in the appeal").

In this case, the associate judge had the authority to issue the transfer order, and that order had the same force and effect as an order of the referring court. Because the associate judge possessed the authority to issue the transfer order, in the absence of a timely request for the referring court to hold a de novo hearing of the motion to transfer, the transfer order signed by the associate judge essentially became an order of the referring court. *See id.* § 54A.111(a). Therefore, we hold that the transfer order is valid, enforceable, and not void. Accordingly, we overrule Appellant's first issue.

### B. The MSA

Appellant's second and third issues challenge the MSA. We address Appellant's third issue first because we conclude that her second issue has been waived. In Appellant's third issue, she argues that the final decree should be vacated because it departs from and does not conform to the terms of the parties' executed MSA. We disagree. The Family Code states that an MSA is binding on the parties if the agreement "(1) provides, in a prominently displayed statement that is in boldfaced type or capital letters or underlined, that the agreement is not subject to revocation; (2) is signed by each party to the agreement; and (3) is signed by the party's attorney, if any, who is present at the time the agreement is signed." FAM.

4

§ 6.602(b). If an MSA satisfies these statutory requirements, a party to the agreement is entitled to judgment on the MSA "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 6.602(c).

Courts have uniformly held that an MSA that satisfies the statutory formalities is binding on the parties and the trial court "and requires the rendition of a divorce decree that adopts the parties' agreement." *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019); *Milner v. Milner*, 361 S.W.3d 615, 618 (Tex. 2012). Unlike other family law settlement agreements, before approving an MSA, the trial court is not required to determine if the parties' negotiated and agreed property division is "just and right." *Highsmith*, 587 S.W.3d at 775; *Milner*, 361 S.W.3d at 618; *see also In re Lee*, 411 S.W.3d 445, 455 (Tex. 2013). Moreover, once signed, an MSA cannot be revoked. *Milner*, 361 S.W.3d at 618. Accordingly, an MSA that complies with the statutory requirements is binding on the parties, and the trial court must enforce its terms. *Toler v. Sanders*, 371 S.W.3d 477, 479–80 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (holding that the trial court cannot alter or modify the parties' property division in a valid MSA); *In re Marriage of Joyner*, 196 S.W.3d 883, 891 (Tex. App.—Texarkana 2006, pet. denied).

Because an MSA is a contract, the principles of contract construction govern its interpretation. *Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017); *Milner*, 361 S.W.3d at 619. Applying these principles, the presence of ambiguities and the interpretation of an unambiguous contract are questions of law that we review de novo. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 763 (Tex. 2018); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999). Unambiguous contracts are enforced as written. *Toler*, 371 S.W.3d at 481. Further, an ambiguity does not arise simply "because the parties to an agreement advance differing interpretations." *Garcia-Udall v. Udall*, 141 S.W.3d 323, 328 (Tex. App.—Dallas 2004, no pet.). Therefore, "[i]f the agreement's language can be given a certain and

definite meaning, the agreement is not ambiguous, and the contract's construction is a matter for the court." *Milner*, 361 S.W.3d at 619.

When a dispute exists concerning a contract's meaning, we must ascertain and give effect to the parties' expressed intent, and objective manifestations of intent control. *URI*, 543 S.W.3d at 763–64. As such, we presume that the parties intended "what the words of their contract say," and we interpret the contract's language according to its "plain, ordinary, and generally accepted meaning." *Id.* at 764.

In this case, the MSA satisfies the requirements set out in Section 6.602 and is binding and enforceable. The MSA's preamble provides in prominent language for the irrevocability of the MSA and the parties' rights to seek enforcement. The MSA states in boldfaced, underlined, and capital letters that "**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION. . . . A PARTY TO THIS AGREEMENT IS ENTITLED TO JUDGMENT OF THIS MEDIATED SETTLEMENT AGREEMENT.**" The MSA is signed by Appellant, Appellee, and their attorneys. Its terms are clear and unambiguous. Therefore, Appellee was entitled, and the trial court was required, to enforce the MSA as written. Absent Appellee's consent, the terms expressed in the MSA could not be modified. Accordingly, we overrule Appellant's third issue in part—to the extent that she asserts that the final decree of divorce should be vacated in its entirety.

Appellant recites in her brief that she signed the MSA "under duress and extreme emotional and financial pressure." Although not formally raised as an issue on appeal, we note that Appellant neither claimed nor presented any evidence of duress to the court below. Therefore, Appellant did not preserve this argument for our review. TEX. R. APP. P. 33.1.

In her second issue, Appellant argues that the associate judge abused his discretion in granting the venue transfer. The MSA contains the following provision:

> The undersigned parties herewith agree to compromise and settle the claims and controversies between them arising from and/or related to the facts giving rise to this litigation. The parties wish to avoid potentially protracted and costly litigation, and agree and stipulate that they have carefully considered all claims, facts, potential risks, costs, and outcomes.

Appellant contends that this MSA provision is only applicable to the facts and claims that arose at the time of, or before, the parties' litigation commenced. As such, because the MSA allegedly only addressed some, but not all, of the trial court's orders and the parties' claims, Appellant argues that the MSA did not settle all disputes related to their litigation, including the venue transfer. We disagree.

The plain and unambiguous language of the MSA confirms that the parties intended to settle all claims and controversies between them that would arise from or pertain to this divorce action. Although Appellant argues that "facts giving rise to this litigation" is a temporal limitation that applies only to those matters that occurred before the litigation commenced, the provision, when taken in context, clearly states that the parties considered all claims and potential outcomes. Nevertheless, because we have held that the parties executed a valid and enforceable MSA, which contains a waiver of the parties' rights to litigate further claims related to their divorce action, we conclude that Appellant has waived her right to seek review of the merits of the transfer order. Accordingly, we do not reach the merits of Appellant's second issue.

### C. *The Final Decree and Attorney's Fees*

Finally, in her third issue, Appellant also challenges the allocation of attorney's fees. As we have noted, when entering judgment based on the parties'

MSA, a trial court may not supply additional terms or otherwise modify the agreement—the trial court's judgment must be rendered in strict compliance with the agreement's expressed terms and conditions. *Milner*, 361 S.W.3d at 616; *Vickery v. Am. Youth Camps, Inc.*, 532 S.W.2d 292, 292 (Tex. 1976).

Appellant argues that the recitations in paragraphs 2 through 6 of the "Attorney's Fees" section of the final decree depart from the terms of the MSA. We agree. The MSA states that each party shall be responsible for the payment of their incurred attorney's fees, with the exception of fees to be paid to Hal Brockett because those fees were specifically provided for in the agreement. The final decree ordered:

> Save for the fees owed to Hal Brocket[t], Brocket[t] & McNeel, LLP, to effect an equitable division of the estate of the parties and as a part of the division, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case, subject to the following:

> IT IS ORDERED that within seven (7) days of Petitioner, Joy Maraio-Wilhoit's receipt of funds or proceeds (herein "received funds") from the Edward Jones 401(k), account ending xx733 (also known as the "Industrial Automation Services 401k Plan with Profit Sharing," with account number xx733) awarded to her herein and in the Additional Temporary Orders dated February 2, 2018 (herein the "Temporary Orders") both of which are incorporated in the Qualified Domestic Relations Order (herein "QDRO") attached hereto as **Exhibit "A,"** Petitioner [Appellant] is ordered to tender to O'Neil Wysocki, P.C., $105,111.57 from these funds. The total amount to be received is $244,000.00, with $100,000.00 of this amount having been awarded in the Temporary Orders, and $144,000.00 of this amount being awarded in this decree.

> IT IS ORDERED that this $105,111.57 shall be paid from the $144,000.00 awarded herein to Petitioner [Appellant], and it is found that this $144,000.00 was in existence at the time of the Court's signing of this decree. Should this $144,000.00 be insufficient to pay the $105,111.57 mentioned above, it is ordered that Petitioner [Appellant]

pay any outstanding amounts from the $100,000.00 awarded to her in the Temporary Orders and the QDRO.

IT IS ORDERED that all taxes, penalties, and other expenses associated with the tender, transfer, or payments by, with, or of the received funds from Petitioner [Appellant] to O'Neil Wysocki, P.C. shall be borne by and taxed against Petitioner [Appellant].

IT IS ORDERED that within seven (7) days of Petitioner's [Appellant's] receipt of the funds, Petitioner [Appellant], by and through O'Neil Wysocki, P.C., shall pay C. "Luke" Gunnstaks $11,584.00 of the aforementioned $105,111.57 in attorney's fees, which the Court finds to be reasonable and necessary. IT IS ORDERED that within seven (7) days of Petitioner's receipt of the received funds, Petitioner shall pay $93,527.57 to O'Neil Wysocki, P.C. as attorney's fees from the aforementioned $105,111.57, which the Court finds to be reasonable and necessary.

IT IS ORDERED that judgment is awarded to O'Neil Wysocki, P.C. in the amount of $93,527.57 for attorney's fees, expenses, and costs, with interest at 5% per year compounded annually from the date this judgment is signed until paid. This judgment, for which let execution issue, is awarded against Joy Maraio-Wilhoit, and Joy Maraio-Wilhoit is ordered to pay those fees, expenses, and costs, to O'Neil Wysocki, P.C., as set forth in this "Attorney's Fees" section of this decree. O'Neil Wysocki, P.C. may enforce this judgment for fees, expenses, and costs in their own name by any means available for the enforcement of a judgment for debt. Joy Maraio-Wilhoit consents to O'Neil Wysocki, P.C. placing a lien on any investment, retirement, financial, or other account wherein Joy Maraio-Wilhoit deposits the $105,111.57 referenced herein, and all other accounts where said funds are subsequently transferred to.

The above provisions for the payment of attorney's fees are unsupported by the record and contain additional terms that are inconsistent with and depart from the

express terms and conditions of the MSA.[1]  Accordingly, we sustain Appellant's third issue in part and modify the final decree as follows: (1) the phrase "subject to the following" in paragraph one of the "Attorney's Fees" section of the final decree is stricken; (2) paragraphs 2 through 6 of the "Attorney's Fees" section of the final decree are stricken; and (3) the final decree shall recite: "Save for the fees owed to Hal Brockett, Brockett & McNeel, LLP as provided in the MSA, each party shall be responsible for the payment of all attorney's fees, expenses, and costs incurred by them as a result of their respective legal representation in this case."

III. *This Court's Ruling*

We affirm the judgment of the trial court as modified.

W. STACY TROTTER

JUSTICE

February 4, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[1]Appellant has filed a motion to strike portions of Appellee's brief that concern the attorney's fees awarded by the trial court.  For the reasons already set forth in this opinion, we deny the motion.  However, we note that "[t]he appellate record consists of the clerk's record and, if necessary to the appeal, the reporter's record."  TEX. R. APP. P. 34.1.  Therefore, because the attachments that Appellee submitted with his brief are not part of the appellate record, we cannot and will not consider them.  *See, e.g.*, *Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.).