

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00141-CV

## IN THE MATTER
## OF THE MARRIAGE OF
## BENJAMIN & FLEETA FANNETTE,

### From the 272nd District Court
### Brazos County, Texas
### Trial Court No. 11-001262-CVD-272

## MEMORANDUM OPINION

In this appeal, appellant, Fleeta Fannette, challenges several orders entered by the trial court in her divorce case. Specifically, in four issues, Fleeta contends that the trial court erred in: (1) denying her motion to show authority; (2) rendering divorce without evidence of the statutory elements of insupportability; (3) enforcing a mediated settlement agreement; and (4) granting a motion to sever filed by third parties, A.L. and Robert Fannette.[1] We affirm.

---

[1] A.L. Fannette went by the nickname, Andy. We have received notice from the parties that Andy is now deceased.

# I. BACKGROUND

Fleeta and Benjamin Fannette had been married for sixty-five years when Ben filed his original petition for divorce in Brazos County, Texas, on May 18, 2011. In his divorce petition, Ben asserted that: (1) he "has been a domiciliary of Texas for the preceding six-month period and a resident of this county for the preceding ninety-day period"; (2) the parties were married on or about March 30, 1946; (3) the parties ceased living together as husband and wife on or about April 26, 2011; (4) the marriage had become insupportable because of discord or conflicts of personalities that destroyed the marriage relationship and prevented any reasonable expectation of reconciliation; and (5) the couple did not have any children. However, a couple of months after filing for divorce, Ben's health took a turn for the worse. Nevertheless, in late August 2011, the trial court ordered the parties to participate in mediation. Because his health was declining, Ben returned to a hospital in Tyler, Texas, and executed a power of attorney to his brother Andy.

The trial-court mediation occurred on September 13, 2011. Fleeta was present with her attorney, Marvin Martin, and his legal assistant. Andy attended the mediation on Ben's behalf, in accordance with the previously-executed power of attorney. In his testimony at one of the many hearings in this case, Martin described the mediator as experienced and highly respected. The record indicates a great deal of animosity between the parties. In particular, Fleeta testified that she is a Catholic and that she never wanted the divorce. She also noted that she does not trust Andy's son, Robert. Moreover, Ben and Andy's sister, Marie Fazzino, described Andy as "crooked."

Because of the animosity, the mediation was conducted with the parties in separate rooms with no contact with one another.

After several hours of mediation, the parties reached an agreement. According to the mediated settlement agreement, Ben was to receive, among other things, the couple's house in Millican, Texas, subject to any indebtedness secured by the property; two tracts of land in Cherokee County, Texas; two vehicles in his possession; and a lump-sum payment of $21,745. On the other hand, Fleeta was to receive, among other things, a lump-sum payment of $61,745; 50% of Ben's retirement and annuity accounts; and a 2005 Buick in her possession. In addition, the agreement provided that Fleeta would be allowed to live in the couple's house from September 15, 2011 to January 31, 2012, rent free, so long as she timely paid all utility bills. The agreement also contained the following language:

> 6. The parties agree to appear in court at the first available date to present evidence and secure rendition of judgment in accordance with this Mediated Settlement Agreement. Each party understands that the terms of this Mediated Settlement Agreement may not be independently enforceable against the other party until rendition of the judgment by the Court.
>
> 7. Each party releases the other from all claims, demands, and causes of action each may have against the other, save and except those covenants, duties, and obligations set forth in this agreement.

8. <u>THIS AGREEMENT IS NOT SUBJECT TO REVOCATION.</u>

(Emphasis in original).

Martin testified that he and Fleeta reviewed the final mediated settlement agreement for approximately thirty minutes. Afterwards, Fleeta signed the agreement.

Andy also signed the agreement as Ben's representative under the power of attorney. According to Martin's testimony, Fleeta was of sound mind, understood the contents of the agreement, and was not pressured to sign the agreement.[2]

The following day, September 14, 2012, the attorneys appeared before the trial court for rendition of a judgment of divorce based on the agreement. Neither Ben nor Fleeta attended the hearing. Fleeta testified that she was told that she was not needed at the hearing. Martin countered that he invited Fleeta to attend, but she indicated that she had other things to do. Nevertheless, both parties, through their attorneys, stipulated to Ben's residence, the absence of any children, that the marriage had become insupportable due to discord and conflict, and that there was no chance of reconciliation. No evidence was presented at the hearing.[3] At the conclusion of the September 14, 2011 hearing, the trial court pronounced that the "divorce is granted and rendered." In addition, the trial court wrote "Divorce granted. Rendered divorce" on the portion of the docket sheet corresponding with September 14, 2011. And for further

---

[2] In fact, the agreement that Fleeta signed specifically stated that:

Each signatory to this settlement has entered into the settlement freely and without duress after having consulted with professionals of his or her choice.

. . . .

This stipulation is signed voluntarily and with the advice and consent of counsel on the dates set out below and subject to the Court's approval, and its provisions are intended to be incorporated into a final decree of divorce.

[3] Ben's counsel specifically requested that the trial court waive testimony and grant the divorce. Martin, on behalf of Fleeta, stated: "I'll stipulate and add that this couple lived in Millican, Texas, which is part of Brazos County. In fact, this couple—my client is 87."

clarification, the trial court responded to a question by Ben's counsel that:  "He is divorced."

A few days later, on September 17, 2011, Ben passed away.  Subsequently, on September 30, 2011, C. Patrick Meece filed a suggestion of death and a motion for withdrawal and substitution of counsel, which stated that he, rather than Martin, represented Fleeta now.  Meece later objected to the trial court signing a final divorce decree, asserting that the marriage terminated on Ben's death and that the proceeding should therefore be dismissed.  Meece also filed a Rule 12 Motion to Show Authority—the contents of which mirrored the earlier-filed objections to the trial court signing a final divorce decree.  *See* TEX. R. CIV. P. 12.  Ben's counsel filed responses to Meece's filings.

In the meantime, Andy allegedly initiated a probate proceeding in Cherokee County, was appointed executor of Ben's estate, and retained Ben's counsel to represent him in his capacity as executor.  Thereafter, on November 18, 2011, Fleeta filed a "counterpetition" against Andy and Robert, asserting claims of fraud, threat, duress, coercion, impaired capacity, unfair tactics, mistake, breach of fiduciary duty, conversion, negligent misrepresentation, conspiracy, participatory and vicarious liability, and fraud on the community.  In this "counterpetition," Fleeta argued that Andy and Robert engaged in self-dealing and sought to attack the Mediated Settlement Agreement that she had previously signed.  In fact, Fleeta specifically stated that she "revokes consent to the Mediated Settlement Agreement signed on September 13, 2011 . . . ."

On November 18 and December 22, 2011, the trial court conducted hearings on Fleeta's various motions. Several witnesses testified, and at the conclusion of the December 22, 2011 hearing, the trial court signed the final divorce decree. On February 3, 2012, the trial court denied Fleeta's Motion to Show Authority and severed Fleeta's claims against Andy and Robert from this cause. The trial court also made numerous findings of fact and conclusions of law, which were entered on March 29, 2012. Fleeta filed a motion for new trial, which was overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). This appeal followed.

## II.    FLEETA'S MOTION TO SHOW AUTHORITY

In her first issue, Fleeta argues that the trial court erred in denying her Motion to Show Authority because Ben's death terminated the attorney-client relationship between Ben and his attorney. As such, Fleeta contends that Ben's counsel was not authorized to file a motion to enter a final divorce decree, nor was he authorized to appear on Ben's behalf at any hearing subsequent to Ben's death.

### A.    Applicable Law

It is well-established that an attorney-client relationship terminates upon the death of the client. *Murphy v. Murphy*, 21 S.W.3d 797, 798 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (per curiam) (citing *Loffler v. Univ. of Tex. Sys.*, 610 S.W.2d 188, 189 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ); *Brooks v. Hale*, 457 S.W.2d 159, 164 (Tex. Civ. App.—Tyler 1970, writ' ref'd n.r.e.)). Moreover, a party's death may moot certain issues between the parties, unless property rights are affected. *Id.* (citing *Olson v. Comm'n for Lawyer Discipline*, 901 S.W.2d 520, 523-24 (Tex. App.—El Paso 1995, no

writ)); *see Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 572-73 (Tex. 1975) (refusing to abate an appeal from a judgment awarded to a debtor in an unreasonable collection case where the debtor died pending resolution of his case on appeal); *Black v. Black*, 673 S.W.2d 269, 269-70 (Tex. App.—Texarkana 1984, no writ) ("However, when a case becomes moot after judgment[,] the appeal should be dismissed . . . . An exception exists in this and most jurisdictions: in an appeal from a divorce judgment, the death of a party during an appeal does not preclude an adjudication of the appeal's merits, if the divorce decree affects property rights of the parties." (internal citations omitted)); *Shook v. Republic Nat'l Bank of Dallas*, 627 S.W.2d 741, 752 (Tex. App.—Tyler 1982) (op. on original submission), *rev'd on other grounds*, 653 S.W.2d 278 (Tex. 1983) (declining to abate a borrower's appeal, though the borrower died pending disposition, in a case involving claims for usury and counterclaims for recovery of principal and interest); *Verret v. Verret*, 570 S.W.2d 138, 140 (Tex. Civ. App.—Houston [1st Dist.] 1978, no writ) (refusing to abate a husband's appeal from a divorce decree despite his death while the appeal was pending); *Walsh v. Walsh*, 562 S.W.2d 501, 502 n.1 (Tex. Civ. App.—San Antonio 1978, no writ) (declining to abate a husband's appeal from a divorce decree awarding wife custody of their child and dividing the community estate despite the death of the wife).

## B.      Discussion

In Texas, a marriage may only be terminated by death or court decree. I*n re Wilburn*, 18 S.W.3d 837, 840 (Tex. App.—Tyler 2000, pet. denied) (citing *Claveria v. Claveria*, 615 S.W.2d 164, 167 (Tex. 1981)). And a judgment typically goes through three

stages: (1) rendition; (2) reduction to writing; and (3) entry. *Id.* (citing *Oak Creek Homes, Inc. v. Jones*, 758 S.W.2d 288, 290 (Tex. App.—Waco 1988, no writ)). "A judgment is 'rendered' when the matter submitted to [the trial court] for adjudication is officially announced either orally in open court or by memorandum filed with the clerk." *Id.* at 840-41 (citing *Samples Exterminators v. Samples*, 640 S.W.2d 873, 875 (Tex. 1982); *Oak Creek Homes, Inc.*, 758 S.W.2d at 290). "The principle that an oral judgment is valid is predicated upon the supporting principles that the entry of a trial judgment is only a ministerial act." *Id.* at 841 (citing *Dunn v. Dunn*, 439 S.W.2d 830, 832 (Tex. 1969)). As such, a written judgment signed by the trial judge is not a prerequisite to the finality of a judgment. *Id.* (citing *Dunn*, 439 S.W.2d at 832-33).

Here, the trial court orally pronounced that Ben and Fleeta were divorced at the end of the September 14, 2011 hearing. In addition, the trial court made a notation on the docket sheet that the divorce was granted and rendered on September 14, 2011. Consequently, the marriage between Ben and Fleeta ended when the decree of divorce was orally pronounced on September 14, 2011. Thus, the trial court's signing of the final divorce decree several months after Ben's death constituted a ministerial act. *See id.*; *see also Dunn*, 439 S.W.2d at 832 (stating that the trial court has a ministerial duty to sign a judgment after oral rendition); *In re Beavers*, 648 S.W.2d 729, 733 (Tex. App.—Amarillo 1983, no writ) ("After having rendered judgment in open court approving the parties' settlement agreement, the court's remaining duty was to exercise its ministerial function by signing a judgment which literally complied with the terms of the parties' settlement agreement as stated, agreed to[,] and approved in open court."). Therefore,

even if Fleeta is correct in asserting that Ben's counsel lacked authority to act after Ben's death, it would have no effect on the trial court's ministerial duty to sign the final written judgment granting the divorce.

Nevertheless, we also reject Fleeta's assertions that Ben's counsel was not authorized to act on Ben's behalf after Ben's death. As noted above, the attorney-client relationship does not necessarily terminate upon the death of the client. *See Murphy*, 21 S.W.3d at 798; *Olson*, 901 S.W.2d at 523-24; *Loffler*, 610 S.W.2d at 189; *Brooks*, 457 S.W.2d at 164. When property issues remain, the attorney may still act on behalf of the client. *See Murphy*, 21 S.W.3d at 798; *Olson*, 901 S.W.2d at 523-24; *Loffler*, 610 S.W.2d at 189; *Brooks*, 457 S.W.2d at 164. Here, Ben and Fleeta did not have any children. Instead, the focus of the divorce dispute pertained to the division of the couple's property. Thus, the action was not purely personal in nature, and as such, Ben's attorney was authorized to act on Ben's behalf to finalize property issues associated with the divorce. *See In re Wilburn*, 18 S.W.3d at 842 ("A purely personal action, such as the actual divorce that dissolves a marriage, becomes moot upon the death of one of the spouses."); *Black*, 673 S.W.2d at 270 (concluding that litigation pertaining to the custody of a child did not involve property rights, and as such, the litigation was mooted by the death of one of the spouses); *see also Dunn*, 439 S.W.2d at 834 (concluding that the personal nature of the divorce ended after the husband dies, yet the property rights portion of the judgment dissolving the marriage entered two days earlier was still ripe for appeal). Based on the foregoing, we cannot conclude that the trial court erred in denying Fleeta's Motion to Show Authority. Accordingly, we overrule Fleeta's first issue.

## III. THE MEDIATED SETTLEMENT AGREEMENT

In her third issue, Fleeta contends that the trial court erred in enforcing the mediated settlement agreement because the record allegedly contains ample evidence demonstrating that the agreement was procured through fraud, duress, or other dishonest means, thereby rendering the agreement unenforceable.

### A. Applicable Law

A mediated settlement agreement is immediately binding on the parties if the agreement: (1) provides in a prominently displayed statement that is in boldfaced type, capital letters, or underlined, that the agreement "is not subject to revocation"; (2) is signed by the parties; and (3) is signed by the parties' attorneys who are present at the time of signing. TEX. FAM. CODE ANN. § 6.602(b) (West 2006); *see Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.). If the mediated settlement agreement meets these requirements, a party is entitled to judgment notwithstanding Rule 11 of the Texas Rules of Civil Procedure or another rule of law. TEX. FAM. CODE ANN. § 6.602(c). And, compliance with Section 6.602 makes the agreement an exception to Sections 7.001 and 7.006 of the Texas Family Code, which allow for the revision and repudiation of settlement agreements. *Id.* at §§ 7.001, 7.006 (West 2006); *see In re Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied). Moreover, a Section 6.602 agreement may be ruled on without a determination by the trial court that the terms of the agreement are just and right. *In re Joyner*, 196 S.W.3d at 889.

However, a court is not required to enforce a mediated settlement agreement if it is illegal in nature or procured by fraud, duress, coercion, or other dishonest means.

*Morse*, 349 S.W.3d at 56 (citing *In re Joyner*, 196 S.W.3d at 890; *Boyd v. Boyd*, 67 S.W.3d 398, 404-05 (Tex. App.—Fort Worth 2002, no pet.); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding)). The party seeking to avoid enforcement of the agreement bears the burden to show that it should not be enforced. *See Morse*, 349 S.W.3d at 56; *see also Pearce v. Pearce*, 824 S.W.2d 195, 198 (Tex. App.—El Paso 1991, writ denied) (noting that a predecessor statute "places the burden of proving the invalidity of a marital agreement upon the party seeking to avoid its enforcement").

## B.    Discussion

In support of her contentions that Andy and Robert engaged in self-dealing and that the mediated settlement agreement was procured through fraud, duress, or other dishonest means, Fleeta cites to testimony provided at hearings on various motions conducted after the trial court rendered divorce. We first note that the parties do not dispute that the mediated settlement agreement meets the requirements of Section 6.602. *See* TEX. FAM. CODE ANN. § 6.602. Next, we find it significant that none of the testimony Fleeta references in this issue was presented to the trial court at the September 14, 2011 hearing. At that hearing, Fleeta's attorney stipulated to the elements necessary for the ground of insupportability. At no time during this hearing did Fleeta assert any misconduct in the creation of the mediated settlement agreement. Moreover, the agreement was tendered to the trial court and subsequently approved without any objection raised by Fleeta.

Texas courts have held that "[o]nce a party asks the court to accept a settlement agreement and render judgment, they may not later attack that judgment." *In re Joyner*,

196 S.W.3d at 889 (citing *Mailhot v. Mailhot*, 124 S.W.3d 775, 777 (Tex. App.—Houston [1st Dist.] 2003, no pet.)); *see Cayan v. Cayan*, 38 S.W.3d 161, 166 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that, while Section 6.602 cannot be imposed on the parties, once affirmative steps are taken to comply with that section, neither party can repudiate the agreement). Further, Section 6.602 does not authorize the trial court to substitute its judgment for the mediated settlement agreement entered by the parties if the mediation agreement complies with the statutory requirements making it irrevocable and granting the parties the entitlement to a judgment thereon. *In re Joyner*, 196 S.W.3d at 890. Therefore, under these circumstances, Fleeta cannot attack the trial court's judgment of divorce and division of the property.

Nevertheless, Fleeta, who did not attend the September 14, 2011 hearing, later asserted claims of misconduct regarding the mediated settlement agreement. In fact, Fleeta alleged that Andy and Robert engaged in self-dealing and other misconduct pertaining to the agreement, though neither Andy nor Robert were named parties in the divorce suit. Fleeta testified at a subsequent hearing that: (1) Andy and Robert exercised undue influence over Ben by inducing him to change his will so that Robert would become his sole beneficiary and to sign a gift deed to the couple's house to Robert; (2) she was exhausted and confused when she signed the mediated settlement agreement; and (3) she insisted on fighting the divorce.

To controvert Fleeta's testimony, Ben's counsel elicited testimony from Martin, Fleeta's initial divorce attorney; Robert; and Andy. Robert and Andy disputed Fleeta's claims that they engaged in self-dealing and unduly influenced Ben. Both Robert and

Andy testified that Ben was very angry at Fleeta for allegedly taking more than $120,000 in cash that he had hidden in the couple's house and that Ben appeared to be pleased that the divorce had been granted. Martin, on the other hand, testified that Fleeta's assertion that she did not understand the mediated settlement agreement and that she was coerced into signing it was "pure fiction." Martin noted that Fleeta had the agreement for at least thirty minutes and that he explained the agreement to her before she signed. Martin also noted that he invited Fleeta to attend the September 14, 2011 hearing, but she declined because she had other things to do.

Clearly, the trial court was presented with conflicting evidence regarding the circumstances surrounding the mediated settlement agreement. Assuming that Fleeta was entitled to attack the mediated settlement agreement upon which the divorce decree relied, we note that the trial judge, as the factfinder in this case, was entitled to believe all, some, or none of a witness's testimony if a reasonable juror could. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819-20 (Tex. 2005); *Spring Creek Vill. Apartments Phase V, Inc. v. Gen. Star Indem. Co.*, 261 S.W.3d 206, 216-17 (Tex. App.—Houston [14th Dist.] 2008, no pet.). And based on its comments in open court and its findings of fact and conclusions of law, we find that the trial court did not believe Fleeta's version of the story. *See City of Keller*, 168 S.W.3d at 822; *Tex. Dep't of Assistive & Rehabilitation Servs. v. Howard*, 182 S.W.3d 393, 407 (Tex. App.—Austin 2005, pet. denied) (noting that the factfinder is free to believe some witnesses, disbelieve others, and resolve any inconsistencies in their testimony). In fact, the trial court noted that:

After the last hearing I had a number of concerns; however, they—those concerns have been answered today through the testimony of Marvin Martin. I can't get around the testimony of Marvin Martin, who clearly has testified that, Ms. Fannette, you entered into an agreement, there was no fraud. And you may have made a bad deal, but you made a deal, and a deal is a deal.

. . . .

But you got to show fraud, and Mr. Martin has totally refuted any fraud in the case.

Further, in its conclusions of law, the trial court found that: "The September 13, 2011 mediated settlement agreement between Benjamin and Fleeta Fannette is valid, enforceable and irrevocable."

Based on our review of the record, we cannot say that Fleeta satisfied her burden of demonstrating that the mediated settlement agreement was procured by fraud or other dishonest means and, thus, should not be enforced. *See Morse*, 349 S.W.3d at 56; *In re Joyner*, 196 S.W.3d at 890; *see also Pearce*, 824 S.W.2d at 198. As such, we conclude that the trial court's resolution of the disputed facts is supported by the record and should be upheld. We overrule Fleeta's third issue.

## IV. THE DIVORCE DECREE

In her second issue, Fleeta asserts that the trial court erred in rendering divorce without evidence of the statutory elements of insupportability. We disagree.

Whether evidence is sufficient to support a decree of divorce on the ground of insupportability is a matter within the trial court's discretion. *See In re Scott*, 117 S.W.3d 580, 582 (Tex. App.—Amarillo 2003, no pet.); *see also In re Wellington*, No. 10-07-00181-CV, 2008 Tex. App. LEXIS 7289, at **2-3 (Tex. App.—Waco Aug. 27, 2008, no pet.) (mem.

op.). When the standard of review on appeal is whether the trial court abused its discretion, legal and factual sufficiency questions are factors to consider in applying the standard, rather than independent grounds for review. *See Yarbrough v. Yarbrough*, 151 S.W.3d 687, 690 (Tex. App.—Waco 2004, no pet.); *Walston v. Walston*, 971 S.W.2d 687, 691 (Tex. App.—Waco 1998, pet. denied); *see also In re Wellington*, 2008 Tex. App. LEXIS 7289, at *3.

The insupportability ground for divorce is set out in section 6.001 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 6.001 (West 2006). This ground, also known as no-fault divorce, has three elements: (1) that the marriage has become insupportable because of discord or conflict; (2) that discord or conflict destroys the legitimate ends of the marriage; and (3) there is no reasonable expectation of reconciliation. *Id.*; *see Cusack v. Cusack*, 491 S.W.2d 714, 716 (Tex. Civ. App.—Corpus Christi 1973, writ dism'd w.o.j.); *see also In re Wellington*, 2008 Tex. App. LEXIS 7289, at *3. The party petitioning for a divorce on these grounds has a duty to establish the statutory elements with adequate evidence. *In re Richards*, 991 S.W.2d 32, 37 (Tex. App.—Amarillo 1999, pet. dism'd).

In his original petition for divorce, Ben alleged, as the grounds for divorce, that: "The marriage has become insupportable because of discord or conflict of personalities between Petitioner and Respondent that destroys the legitimate ends of the marriage relationship and prevents any reasonable expectation of reconciliation." This language essentially tracks the language of section 6.001 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 6.001. In addition, at the final divorce hearing conducted on September 14, 2011, Ben's counsel represented the following to the trial court:

We both stipulate that the petitioner [Ben], when the petition was filed, had lived in the State of Texas for 6 months and in the county for 90 days prior to the filing of that petition. And I know that because I prepared the petition and filed it in representing the petitioner. And so I questioned him about that.

So that we also would testify that or stipulate that there was [sic] no children born of this marriage; that the respondent was not pregnant at the time of the mediated settlement agreement or as of today; and that due to discord, conflict between the parties that for them to live together as husband and wife is insupportable; and there was no chance of reconciliation.

In response, Martin, on behalf of Fleeta, stated: "I'll stipulate and add that this couple lived in Millican, Texas, which is part of Brazos County. In fact, this couple—my client is 87." And based on the stipulations, the trial court granted the divorce.

As noted by Ben's appellate counsel, a stipulation is a judicial admission, which constitutes a formal waiver of proof and is conclusive on the party making it. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (stating that a judicial admission includes assertions of fact, not pleaded in the alternative, in the live pleadings of a party); *Humphries v. Humphries*, 349 S.W.3d 817, 824 (Tex. App.—Tyler 2011, pet. denied) (noting that when a party judicially admits facts, the party is estopped from claiming the contrary and that a true judicial admission relieves the other party's burden of proof); *McCuen v. Huey*, 255 S.W.3d 716, 726 (Tex. App.—Waco 2008, no pet.) (stating that the contents of a stipulation constitute judicial admissions, are conclusive on the issues addressed, and estop the parties from claiming to the contrary); *see also Byrd v. Byrd*, No. 04-11-00700-CV, 2012 Tex. App. LEXIS 8273, at *13 (Tex. App.—San Antonio Oct. 3, 2012, no pet.) (mem. op. on reh'g) ("A stipulation is an

agreement, admission, or concession made in a judicial proceeding by the parties. A stipulation constitutes a binding contract between the parties and the court."); *Rooney v. Rooney*, No. 14-10-01007-CV, 2011 Tex. App. LEXIS 6682, at *10 (Tex. App.—Houston [14th Dist.] Aug. 23, 2011, no pet.) (mem. op.) ("A judicial admission is a formal waiver of proof usually found in pleadings or the parties' stipulations.").

Though Fleeta argues that the record contains no testimony regarding the elements of insupportability, she does not cite authority stating that a divorce cannot be granted on the basis of stipulations made by the parties. Instead, she cites to her own testimony given at a hearing subsequent to the granting of the divorce to show that the judgment of divorce is not supported by legally and factually sufficient evidence. We do not find this testimony to be persuasive in demonstrating that the trial court abused its discretion in granting the divorce. *See In re Scott*, 117 S.W.3d at 582; *see also In re Wellington*, 2008 Tex. App. LEXIS 7289, at **2-3. Therefore, because the judicial admissions support each element necessary to establish the dissolution of the marriage based on insupportability, we cannot say that the trial court abused its discretion in granting the divorce. *See* TEX. FAM. CODE ANN. § 6.001; *Humphries*, 349 S.W.3d at 824; *McCuen*, 255 S.W.3d at 726; *In re Scott*, 117 S.W.3d at 582; *see also In re Wellington*, 2008 Tex. App. LEXIS 7289, at **2-3. Accordingly, we overrule Fleeta's second issue.

## V.    THE MOTION TO SEVER

In her fourth issue, Fleeta asserts that the trial court erred in severing this dispute from the claims she brought against Andy and Robert after the divorce was granted.

Specifically, Fleeta argues that "the severed claim is so interwoven with the remaining action that it involves identical facts and issues."

Texas Rule of Civil Procedure 41 provides that "any claim against a party may be severed and proceeded with separately." TEX. R. CIV. P. 41. A trial court's decision to sever will be reversed only upon a finding of an abuse of discretion. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex. 1990). A severance is proper if: (1) the controversy involves more than one cause of action; (2) the severed cause is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed cause is not so intertwined as to involve identical facts and issues. *Id.* The controlling reasons for severance are to do justice, avoid prejudice, and further the convenience of the parties and the court. *See id.*; *see also Dayne v. Tex. Dep't of Family & Protective Servs.*, No. 13-10-00679-CV, 2011 Tex. App. LEXIS 8340, at **26-27 (Tex. App.—Corpus Christi Oct. 20, 2011, pet. denied) (mem. op.).

Based on our review of the record, we cannot say that the trial court abused its discretion in severing the divorce action from Fleeta's claims. This is true for many reasons. First, it is clear to us that Fleeta's claims were not timely filed in the divorce action. As stated above, the trial court rendered divorce on September 14, 2011; however, on November 18, 2011, more than two months after the trial court rendered the divorce, Fleeta filed a "counterpetition" against Andy and Robert, asserting claims of fraud, threat, duress, coercion, impaired capacity, unfair tactics, mistake, breach of fiduciary duty, conversion, negligent misrepresentation, conspiracy, participatory and vicarious liability, and fraud on the community. This was too late to impact the

divorce. *See Boarder to Boarder Trucking, Inc. v. Mondi, Inc.*, 831 S.W.2d 495, 499 (Tex. App.—Corpus Christi 1992, no writ) ("However, after judgment is rendered, it is too late to amend, whether by trial amendment or an amendment complete in itself.") (citing *Morris v. Hargrove*, 351 S.W.2d 666, 668 (Tex. Civ. App.—Austin 1961, writ ref'd n.r.e.); *Warren v. Ward Oil Corp.*, 87 S.W.2d 501, 502-03 (Tex. Civ. App.—Texarkana 1935, writ dism'd)). Furthermore, the record does not indicate that Fleeta filed a motion with the trial court to permit a late filing. *See, e.g., Gott v. Rice Consol. Indep. Sch. Dist.*, No. 01-07-00051-CV, 2008 Tex. App. LEXIS 8067, at *14 (Tex. App.—Houston [1st Dist.] Oct. 23, 2008, no pet.) (mem. op.) ("'If a party files [a pleading] late, Rule 5(b) authorizes the trial court 'upon motion' to permit the late filing, if the movant shows good cause for the failure to act.'" (quoting *Woods v. Woods*, 193 S.W.3d 720, 722 (Tex. App.—Beaumont 2006, pet. denied) and citing *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 685-88 (Tex. 2002))).

And finally, the Texas Supreme Court has stated that:

> A [divorce action] plaintiff . . . may join as independent claims any or as many claims wither legal or equitable or both as he may have against the *opposing party* . . . . Further . . . [either] party may state as many separate claims as he or she has regardless of consistency and whether they are based on legal or equitable grounds or both.

*Twyman v. Twyman*, 855 S.W.2d 619, 625 n.16 (Tex. 1993) (emphasis added). However, Fleeta does not cite, nor are we aware of, authority allowing her to join her independent

claims against third-parties—Andy and Robert—in the underlying divorce action, which solely involved Ben and Fleeta.[4]

Therefore, based on the foregoing, we conclude that the trial court did not abuse its discretion in severing Fleeta's claims against Andy and Robert from the underlying divorce action. *See Horseshoe Operating Co.*, 793 S.W.2d at 658. We overrule Fleeta's fourth issue.

## VI.  CONCLUSION

Having overruled all of Fleeta's issues on appeal, we affirm the orders of the trial court.


AL SCOGGINS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
(Chief Justice Gray dissents with a note)*
Affirmed
Opinion delivered and filed July 11, 2013
[CV06]

*(Chief Justice Gray dissents with a note. A separate opinion will not issue. This case presents several complex procedural issues. I find it necessary to briefly note the most critical of those issues wherein I disagree with the Court's resolution. Ultimately, this

---

[4] And, in further support of our analysis, we point out that the trial court, in its conclusions of law, noted the following:

> 8.  The document entitled "Respondent's Counterpetition" filed November 18, 2011 was ineffective to assert any causes of action against Benjamin Fannette because; a) it was filed after rendition of judgment and, b) it was filed after the death of Benjamin Fannette and named Benjamin Fannette as defendant rather than the executor of his estate or a personal representative.

> 9.  Any causes of action against Andy Fannette and Robert Fannette contained in "Respondent's Counterpetition" were improperly joined to the divorce proceeding.

case may get to the same result, but I believe the procedure was unduly short circuited to get there. Accordingly, I would reverse the trial court and remand this proceeding. Rather than cause further delay in this appeal, I will briefly identify my principal areas of concern and disagreement with the Court in this note. A separate opinion will not issue.

1. The cases discussing mootness upon the death of a party (page 6 of the opinion) were all death-on-appeal cases, not the death of a party before the judgment was signed. While helpful in understanding and analyzing the issues, I do not believe those cases to be controlling. The proper procedure was to grant the motion to show cause, await the appointment of a representative of Ben's estate, and allow that representative to appear and proceed with the resolution of the litigation. There were a lot of events and representation of the deceased that occurred before there was a duly appointed representative. The proper procedure upon the death of a party on appeal is entirely different than the death of a party before a final, appealable judgment is signed.

2. The procedure described in this appeal acknowledges that a mediated settlement agreement can be challenged but fails to address how to challenge it. And how the challenge was resolved in this proceeding raises the question: What is the proper procedure to challenge a mediated settlement agreement? Upon what basis was the trial court operating when he determined disputed issues of fact regarding the circumstances surrounding the mediated settlement agreement? *See* pg. 12 of opinion. There is no indication the "hearing" was to be a trial before the bench on the validity of the challenge to the mediated settlement agreement including the resolution of disputed issues of fact.

3. Given that factual disputes surrounding the validity of the mediated settlement agreement were interwoven with the allegations of impropriety by Andy and Robert, and were made before any judgment was signed, I question the Court's conclusion that the "underlying divorce action solely involved Ben and Fleeta." Possibly the "divorce" did, but the property ownership pursuant to deciding the validity of the mediated settlement agreement and the death of Ben were intricately involved in this proceeding.

With these comments, I respectfully dissent.)