**In the Interest of C.H., JR., Minor Child.**

**No. 05–09–00386–CV.**

Court of Appeals of Texas, Dallas.

Oct. 13, 2009.

April E. Smith, Mesquite, TX, for Appellant.

Craig Watkins, Dallas County District Attorney, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

M.C. (Mother) appeals the trial court's judgment terminating her parent-child relationship with her son, C.H., Jr. On appeal, she argues that the trial court abused its discretion when it refused to set aside the parties' mediated settlement agreement and that she received ineffective assistance of counsel. We affirm.

### Terms of Rule 11 Binding Mediated Settlement Agreement

The Texas Department of Family and Protective Services filed a petition to terminate Mother's parental rights.[1] The

---

1. The Department also petitioned to terminate father's parental rights. The father voluntari-

parties mediated the case and signed a "Rule 11 Binding Mediated Settlement Agreement," which provided:

1. The parties agree that there shall be an ICPC Home Study done on the home of [R.M.] and [C.M.], whose address is . . ., Tulsa, OK 74127, on behalf of the child, [C.H.], JR., whose date of birth is . . . .

2. The parties agree that in the event that the ICPC Home Study is approved on [R.M.] and [C.M.], then with the approval of the Attorney/Guardian ad Litem, the child shall be moved to the home of [R.M.] and [C.M.].

3. The parties agree that in the event the child is moved to the home of [R.M.] and [C.M.], that [R.M.] and [C.M.] shall be named as the Joint Permanent Managing Conservators of the child, [C.H.], JR., and the Respondent Mother, [M.C.], shall be named as the Permanent Possessory Conservator.

4. The parties agree that in the event that the home of [R.M.] and [C.M.] is not approved, that a Home Study shall be conducted on the home of [K.H.], whose address is . . . Farmers Branch, Texas 75234.

5. The parties agree that in the event that the Home Study is approved on [K.H.], then with the approval of the Attorney/Guardian ad Litem, the child shall be moved to the home of [K.H.].

6. The parties agree that in the event the child is moved to the home of [K.H.], that [K.H.] shall be named as the Permanent Managing Conservator of the child, [C.H.], JR., and the Respondent Mother, [M.C.], shall be named as the Permanent Possessory Conservator.

7. The parties agree that it is in the best interest of the child, that in the

event that either [R.M.] and [C.M.] or [K.H.] [sic], that visitation for the Respondent Mother, [M.C.], shall be as arranged by the parties and supervised by the Permanent Managing Conservator or the Permanent Managing Conservator's designated adult representative.

. . . .

10. The parties agree that in the event that the first two Home Studies are not approved by either CPS or the Attorney/Guardian ad Litem, then, Home Studies shall be conducted on the homes of [S.C.] or [D.H.], but the Home Studies shall be conducted only if [S.C.] and/or [D.H.] contact CPS caseworker. . . . The parties agree that in order for Home Studies to be done on [S.C.] and/or [D.H.], [S.C.] and/or [D.H.] shall contact CPS by July 1, 2008, to confirm their interest in having Home Studies conducted on their homes.

11. The parties agree that in the event that none of the above Home Studies is approved by either CPS or the Attorney/Guardian ad Litem, that the Respondent Mother has a right to a Placement Hearing before the District Judge.

12. The parties agree that if, after the Placement Hearing, the District Judge places the child with any person or persons named above, then the person or persons with whom the child has been placed shall be named as Permanent Managing Conservator, the Respondent Mother shall be named as Permanent Possessory Conservator, and visitation shall be as arranged by the parties and supervised by the Permanent Managing Conservator or the Permanent Managing Conservator's designated adult representative.

ly relinquished his parental rights and is not a party to this appeal.

13. The parties agree that in the event that the District Judge does not place the child with any person or persons named above, then, the parties agree to abide by the following:

a. The parties agree that the parental rights of Respondent Mother, [M.C.], shall be terminated based on Texas Family Code, Section 161.001(1)(O), which specifies that the parent has failed to comply with the provisions of a Court order, and best interest of the child, and that the Director of the Dallas County Child Protective Services is appointed as Managing Conservator of the children [sic] with the right to consent to the adoption of the child. Termination of the Respondent Mother's rights shall be based solely on the failure to complete Court–Ordered services and best interest of the child. There shall be no other findings of any other grounds for termination.

b. Respondent Mother, [M.C.] stipulates to having committed the conduct defined in Section 161.00l(*l* )(O), failure to complete Court-ordered services, and that termination is in the best interest of the child.

. . . .

*THIS AGREEMENT IS NOT SUBJECT TO REVOCATION. THIS AGREEMENT IS SIGNED BY EACH PARTY TO THE AGREEMENT AND EACH PARTY'S ATTORNEY WHO IS PRESENT AT THE TIME THE AGREEMENT IS SIGNED. A PARTY IS ENTITLED TO JUDGMENT ON THIS MEDIATED SETTLEMENT AGREEMENT NOTWITHSTANDING RULE 11, TEXAS RULES OF CIVIL PROCEDURE, OR ANOTHER RULE OF LAW.*

### Oklahoma and Other Home Studies

Pursuant to the mediated settlement agreement, the trial court ordered an ICPC home study on the home of R.M. and C.M. in Oklahoma. The Oklahoma Department of Human Services reported to the trial court that it attempted to complete the home study, but that placement was denied. The denial was based on R.M.'s disclosure that when she lived in Texas she had physically disciplined a twelve-year-old child in her care and had left marks on the child's arms. The report further stated that R.M. disclosed that the "child was removed from her home by either the police or CPS, and that the child never returned to her home." Oklahoma DHS reported that when it tried to verify the incident, it was told that the Department could not locate a record of this event.[2] Even though Oklahoma DHS was unable to verify the incident, it denied placement with R.M. and C.M. based on R.M.'s admissions. It also reported that R.M. disclosed that she and C.M. planned to change residences later that year and, after discussing "these issues" with R.M., it believed denial of placement was in the best interest of all parties.

When the Department realized that the first request for a home study on the home of R.M. and C.M. misspelled the couple's last name, and that the incident that served as the basis of the denial had not resulted in any action against R.M., it requested a second home study from Oklahoma. But Oklahoma DHS again denied placement based on R.M.'s admissions

---

**2.** A Department caseworker testified at the placement hearing that the Department was unable to verify this incident because R.M.'s last name was misspelled. The caseworker testified that after the Department obtained the correct spelling of R.M.'s last name, it located the incident in its records. The caseworker testified that no action was taken against R.M. as a result of the incident.

about physically disciplining a child in her care. It pointed out that "Oklahoma policy states assessments are denied when ... 'the applicant or any person residing in the home has a history of alleged or confirmed child abuse, neglect, or both.'" The record also showed that C.H., Jr.'s guardian ad litem did not approve placement in the home of R.M. and C.M.

The Department then either conducted or attempted to conduct home studies on the other individuals named in the mediated settlement agreement, but did not recommend placement with any of these individuals.

## Placement Hearing

The trial court conducted a placement hearing pursuant to the terms of the mediated settlement agreement, after which it denied placement and terminated Mother's parental rights. Mother moved to set aside the mediated settlement agreement on the ground it was not enforceable because Oklahoma DHS failed to conduct a complete home study pursuant to the trial court's order. The trial court held a hearing on the motion and denied it. Mother timely filed an amended motion for new trial incorporating a statement of points on appeal. *See* TEX. FAM.CODE ANN. § 263.405(b) (Vernon 2008). She argued that the mediated settlement agreement should be set aside because it denied her due process, she did not sign it voluntarily, and she was denied effective assistance of counsel. The motion was overruled by operation of law.

## Issue One: Was appellant denied due process?

In her first issue on appeal, Mother argues that the trial court abused its discretion when it refused to set aside the mediated settlement agreement because Oklahoma DHS's failure to conduct a com-

plete home study on R.M. (1) caused Mother's signature on the agreement to be a mistake and (2) denied her due process. In her statement of points on appeal, Mother did not raise mistake as a basis for setting aside the mediated settlement agreement. Consequently, we may not consider that issue on appeal. *Id.* § 263.405(i) (Vernon 2008); *see In re J.O.A.,* 283 S.W.3d 336, 341 (Tex.2009). And we conclude that Mother was not denied due process.

## Standard of Review

■ The Texas Family Code provides that a trial court may refer a suit affecting the parent-child relationship to mediation. TEX. FAM.CODE ANN. § 153.0071(c) (Vernon 2008). If the parties reach an agreement and the agreement meets the statutory requirements, it is binding on the parties and a party is entitled to judgment on the agreement notwithstanding civil procedure rule 11 or another rule of law. *See id.* § 153.0071(d)-(e) (Vernon 2008); *In re L.M.M.,* 247 S.W.3d 809, 811–12 (Tex.App.-Dallas 2008, pet. denied). A court may decline to render a judgment on a mediated settlement agreement if it finds that a party to the agreement was a victim of family violence and that circumstance impaired the party's ability to make decisions, and the agreement is not in the child's best interest. TEX. FAM.CODE ANN. § 153.0071(e–1) (Vernon 2008). We review a trial court's decision not to set aside a mediated settlement agreement for an abuse of discretion. *See Barina v. Barina,* No. 03–08–00341–CV, 2008 WL 4951224, at \*3 (Tex.App.-Austin Nov. 21, 2008, no pet.) (mem.op); *Beyers v. Roberts,* 199 S.W.3d 354, 360 (Tex.App.-Houston [1st Dist.] 2006, pet. denied).

## Discussion

■ Mother does not contend that the mediated settlement agreement fails to

meet the statutory requirements. *See* TEX. FAM.CODE ANN. § 153.0071(d) (agreement must provide in prominently displayed statement in boldfaced type or capital letters or underlined that agreement not subject to revocation and must be signed by each party to agreement and by party's attorney if present). And we note that the agreement conformed to the statutory requirements because it states in bold, underlined, and capital letters that it is not subject to revocation, and it is signed by Mother and Mother's attorney. *See id.* Mother also does not argue that she is a victim of family violence or that the agreement is not in the child's best interest. As a result, the Department was entitled to enforce the agreement as written. *See id.* § 153.0071(e); *In re L.M.M.*, 247 S.W.3d at 811–12; *Barina,* 2008 WL 4951224, at *4. Regardless, the record shows that after the Department refused to recommend placement with the individuals named in the mediated settlement agreement, the trial court conducted a placement hearing during which the court heard testimony from R.M. about why placement in her home was in C.H., Jr.'s best interest. In addition, Mother introduced letters from friends and family stating why S.C. should be appointed C.H., Jr.'s permanent managing conservator. Still, after hearing all the evidence, the trial court denied placement because it was "in the child's best interest" to do so. Mother does not attack that finding. Consequently, we conclude that the trial court did not abuse its discretion by denying Mother's motion to set aside the mediated settlement agreement and appellant was not denied due process. *See In re K.N.M.,* No. 2–08–308–CV, 2009 WL 2196125, at *7 (Tex.App.-Fort Worth July 23, 2009, no pet.) (mem.op) (decided under family code section 153.007).

We resolve appellant's first issue against her.

## Issue Two: Was appellant denied effective assistance of counsel?

In her second issue, Mother contends that she received ineffective assistance of counsel because her attorney did not explain to her that her parental rights would be terminated if the home studies were not approved.

### *Standard of Review*

 Appellant bears the burden on appeal to prove ineffective assistance of counsel. *In re J.P.B.,* 180 S.W.3d 570, 574 (Tex.2005); *In re M.S.,* 115 S.W.3d 534, 544–45 (Tex.2003). To carry her burden, Mother must show that her counsel's performance was deficient and that the deficiency prejudiced her defense. *In re J.P.B.,* 180 S.W.3d at 574; *In re M.S.,* 115 S.W.3d at 544–45. There is a strong presumption that counsel was competent, and it is appellant's burden to rebut this presumption by showing that "counsel's performance fell below an objective standard of reasonableness." *See In re M.S.,* 115 S.W.3d at 549.

### *Discussion*

 In her affidavit attached to her amended motion for new trial, Mother stated that she signed the mediated settlement agreement because her attorney said it was the only way to have the home studies conducted. She said her attorney did not explain to her that, if the home studies were not approved, she was agreeing to terminate her parental rights on the ground that she failed to complete court-ordered services. But at the placement hearing, Mother testified that she had reviewed the mediated settlement agreement more than once, discussed the agreement

with her attorney, understood its provisions, and signed it freely and voluntarily:

Q. [Mother], do you recall attending a mediation in this matter?

A. Yes.

Q. Do you recall that date being about May 29th of 2008?

A. Yes.

Q. It's been a few months, hasn't it?

A. Yes.

Q. Do you recall receiving a copy of the Mediated Settlement Agreement?

A. Yes.

Q. Which is a four-page document?

A. Yes.

Q. Have you in fact looked over that agreement on a few occasions?

A. Yes, I have.

Q. Did you have an opportunity to read that document before signing the document?

A. Yes, I did.

Q. Did you in fact sign that document?

A. Yes, I did.

Q. Did we discuss the contents of that document before you did sign?

A. Yes, we did.

Q. Did you understand the provisions of the agreement?

A. Yes.

Q. Did anybody force you to sign?

A. No.

Q. So you signed it freely and voluntarily; is that correct?

A. Yes.

We conclude that Mother did not rebut the strong presumption of her counsel's competence by showing that counsel's performance was deficient in failing to explain the terms of the mediated settlement agreement to her.

We resolve appellant's second issue against her.

## Conclusion

We affirm the trial court's judgment.