# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00795-CV

**Andrea A. Crowson, Appellant**

**v.**

**Thomas D. Crowson, Jr.; Barrett and Coble, Attorneys at Law; John Barrett; and Kathleen Debra Coble, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-FM-10-002071, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Andrea A. Crowson appeals the trial court's final decree of divorce awarding custody and visitation and dividing the marital estate pursuant to the terms of a mediated settlement agreement (the MSA). In five issues, Andrea[1] challenges the trial court's enforcement of the MSA. For the reasons that follow, we affirm the trial court's final decree of divorce.[2]

---

[1] We refer to the parties by their first names for clarity.

[2] Barrett and Coble, Attorneys at Law; John Barrett; and Kathleen Debra Coble, named herein as appellees, intervened in the divorce proceeding, and the final decree of divorce awarded them judgment against Andrea for attorney's fees. Because Andrea does not attack the validity of the judgment in their favor, the award of attorney's fees is not before us.

## FACTUAL AND PROCEDURAL BACKGROUND

Andrea and Thomas were married in 1994.[3]  Three children were born of the marriage.  On April 16, 2010, Andrea obtained a temporary ex parte protective order on the grounds of family violence and filed a petition for divorce.  The parties subsequently entered into an agreed final protective order that included a finding that Thomas had committed family violence and agreed temporary orders that required Thomas's possession of the minor children to be supervised.  Andrea amended her petition to include tort claims, and the final protective order was modified.  At a hearing on May 9, 2011, the parties confirmed that mediation would occur on or before July 15, 2011.  At another hearing on July 6, two of Andrea's four attorneys were permitted to withdraw, with Andrea's consent.  New counsel entered an appearance on Andrea's behalf (Andrea's divorce counsel), and Andrea continued to be represented by two other attorneys with regard to her tort claims (Andrea's tort counsel).  Andrea's divorce counsel requested a continuance of the trial setting, which was denied.  None of Andrea's attorneys requested a continuance of the mediation date.

On July 14–15, 2011, the parties attended mediation, at which Andrea was represented by both her divorce counsel and her tort counsel.  In addition, a financial business valuation expert was present to assist in valuing the parties' property.[4]  At the conclusion of the mediation, the parties entered into the MSA, which stated in large bold letters on page one that

---

[3] The facts stated herein are taken from the record on appeal.  We accept as true the facts stated in the parties' briefs unless another party contradicts them.  *See* Tex. R. App. P. 38.1(g).

[4] Andrea later testified that she was unsure as to whether the expert was her expert or she and Thomas "shared him."

2

"**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION.**"  The MSA divided the community property, provided for conservatorship and support of the children, and set out the possession schedule.  The final protective order, as modified, was to remain in effect except where inconsistent with the MSA.  The MSA phased out the requirement that Thomas's possession of the children be supervised.

**Prove-up Hearing**

On July 21, 2011, Andrea's divorce counsel filed a motion to withdraw and sent a letter to counsel for Thomas stating that Andrea was repudiating the MSA.  The next day, Andrea's tort counsel filed a motion to withdraw.  On July 29, 2011, at a hearing to prove-up the MSA, the trial court granted the motion to withdraw of Andrea's tort counsel, to which Andrea agreed.  Andrea's divorce counsel withdrew his motion to withdraw, stating that Andrea had agreed that the MSA was irrevocable and he would continue to represent her to "wrap things up."  The trial court questioned the parties and confirmed that they were not intoxicated or under the influence of any substance that would impair their thinking, that there was no mental process, either emotional or cognitive, that prevented the parties from understanding the proceeding, and that neither party had any complaints concerning the services of his or her attorneys.  Andrea testified that she understood that the essence of mediation is compromise, she was not being compelled to go forward in the Court's receiving the MSA and resolving the divorce proceedings, and she was doing so freely and voluntarily.  She further stated that, other than believing that her husband had not told the truth during the course of the proceedings, no one had materially misrepresented anything to her or failed

3

to tell her the truth. Andrea also testified that the MSA contained a statement in boldface capital letters that it was not subject to revocation and that she and her attorney had signed it.

Andrea testified that although she understood the agreement at the time of the hearing, she had not understood at the mediation that it was not subject to revocation or further mediation. She stated that by the end of the mediation she "wasn't comprehending" and "wasn't focused." She acknowledged signing the MSA but stated that she did not remember understanding what she signed. She testified that during the mediation her divorce counsel twice received by fax an affidavit of nonprosecution concerning pending criminal charges against Thomas, her divorce counsel told her not to worry about it, but it scared her. Andrea also testified that she had been diagnosed with post-traumatic stress disorder (PTSD) and that she now understood that she had been experiencing PTSD symptoms during mediation. She also stated that she was not on any medication during mediation.

The trial court questioned her on her education and details of what took place on the days of the mediation, indicating it was trying to determine whether Andrea suffered any impairment during the mediation. Andrea testified that she has a bachelor of science degree in accounting and approximately two years toward an MBA and masters in accounting. She also testified as to when the mediation began each day, where it was conducted, how she got there, who attended, clothing worn by those in attendance, where the parties were in relation to each other, artwork on the wall in the conference room, the length of the mediation, lunch breaks, discussions with the mediator, taking care of her children the evening of the first day, and when the MSA was executed. She stated that there were "things" in the MSA that she "wouldn't have agreed to" and that she "wasn't able to pull

4

it together sometimes" and "had to go back into the bathroom" and "just try to get a deep breath and just pray that it would stop." Andrea also testified that she was represented at mediation by her divorce attorney and her tort attorneys, was advised by a financial advisor, and signed or initialed every page of the MSA.[5]

The trial court concluded that Andrea's testimony did not establish any impairment and that she understood that the MSA was irrevocable. The court found that the MSA contained a prominently displayed statement in boldface type that it was not subject to revocation, was signed by each party and by the attorneys in compliance with sections 6.602 and 153.0071 of the Family Code, and was the agreement of the parties regarding the just and right division of their community estate and the conservatorship, support, and visitation of the children. *See* Tex. Fam. Code §§ 6.602 (mediation procedures in suit for dissolution of marriage), 153.0071 (alternate dispute resolution procedures in suit affecting parent-child relationship). The trial court accepted the MSA and rendered judgment according to its terms.

**Arbitration**

The MSA provided that Andrea's counsel would draft the proposed decree of divorce. Drafting disputes arose, which the parties were unable to resolve. The MSA provided that disputes concerning the form of the decree would be resolved by binding arbitration to be conducted by the person who had acted as mediator. Thomas filed a motion to compel arbitration. At the hearing on the motion, Andrea's divorce counsel was permitted to withdraw and new divorce counsel appeared

---

[5] As previously stated, Andrea testified that she was unsure as to whether the financial expert was her expert or she and Thomas "shared him."

on Andrea's behalf. Noting that it had previously enforced the MSA, the trial court ordered the parties to arbitration on September 1, 2011. The arbitration resulted in an arbitration award setting out the form of the final decree of divorce. On September 2, 2011, Thomas filed a motion to enter the final decree of divorce pursuant to the arbitration award.

Andrea did not seek to have the arbitration award modified, corrected, or vacated. *See* Tex. Civ. Prac. & Rem. Code §§ 171.054 (arbitrator may modify or correct award), .088 (court may vacate award), .091(court shall modify or correct award in specified circumstances). However, on August 23, 2011, prior to the arbitration, Andrea filed a "Motion to Set Aside or Decline to Enforce a Mediated Settlement Agreement." On September, 8, 2011, at the hearing on Thomas's motion to enter, Andrea requested that the trial court also enter an order on her motion to set aside the MSA. The trial court stated that the issues in Andrea's motion had been determined during the July 29 hearing to enforce the MSA and "it was res judicata." However, at the request of counsel for Andrea that there be an order for the record, the trial court signed an order denying Andrea's motion to set aside and interlineated that "[t]he divorce was rendered on July 29, 2011, prior to the filing of the motion to set aside which was filed August 23, 2011." The trial court also signed the final decree of divorce in the form set out in the arbitration award. Although Andrea filed a "Notice of Lack of Capacity to Consent and Notice of Withdrawal of Consent to Mediated Settlement Agreement" on the day of the hearing, she did not ask the trial court to consider it and did not object to the entry of the decree at the hearing.

6

**Motion for New Trial**

On October 5, 2011, Andrea filed a motion for new trial asserting several grounds, including contractual defenses of lack of capacity, duress, coercion, undue influence, unconscionable terms, and fraud. At a hearing on the motion, Andrea testified concerning allegations of family violence by Thomas culminating in an assault on April 14, 2010. She also stated that on the first morning of mediation she could hear Thomas talking and was "nervous" and "scared" being in that close proximity to him and that the second day of the mediation was "very, very bad" and she "couldn't stop thinking of the assault." Andrea further testified that "there was a lot of buzzing" and she did not remember much of the second day. She stated that the mediator left "around 4:00, 4:30," and before leaving told her that the divorce "really need[ed] to be mediated." She further stated that she signed the MSA and initialed the pages but "couldn't tell you what [she] was signing or what was discussed or anything." She testified that after mediation, she saw a counselor who explained PTSD symptoms to her and she now understood that she had been experiencing those symptoms during mediation. She further testified that prior to the prove-up hearing, her divorce counsel had threatened to withdraw and she would not have agreed to enforcement of the MSA if she had thought she would have an attorney. She offered into evidence a financial statement Thomas had provided to a bank in August 2010 indicating a net worth in excess of $21 million and a loan application dated October 2009 reflecting monthly income in excess of $150,000.

On cross-examination, Andrea testified that she had been represented by three attorneys at the mediation, there was a break room between the room where she was located and the

7

room where Thomas was located, and she had attended "a significant number" of hearings where Thomas was present, as well as his deposition, but never looked at him and "didn't have to talk." She stated that she had been provided copies of the financial statement and loan application prior to mediation. She further testified that she stood by her testimony at the prove-up hearing.

In support of her motion, Andrea called the court-appointed psychologist, Alissa Sherry, who had conducted examinations of both parties. She testified that she had diagnosed Andrea with PTSD and dependent personality traits. She stated that PTSD is a stress disorder resulting from a traumatic event and persons with PTSD are likely to become anxious or shut down when confronted with things that remind them of the traumatic event and can become unable to make rational decisions. She testified that mediation could trigger PTSD symptoms and it could be impossible for a party's attorney to recognize the symptoms. On cross-examination, Sherry testified that she had not examined Andrea since November 2010 and was not present at the mediation. On questioning by the court, Sherry testified that she had not been provided new data since her examination of Andrea or any information about Andrea's state of mind at the time of mediation and had no opinion as to her mental state during mediation.

Following testimony, the trial court reviewed what had transpired at the prove-up hearing, attached a copy of the transcript of that hearing as an exhibit in the record, stated that there was no new evidence that had not been presented at the July 29 prove-up hearing, and denied the motion for new trial. Andrea requested findings of fact and conclusions of law, which the trial court denied as not proper under Rule 296 as to a hearing on a motion for new trial. *See* Tex. R. Civ. P. 296. This appeal followed.

8

## STANDARD OF REVIEW

Whether a mediated settlement agreement complies with the requirements of the Texas Family Code is a question of law that we review de novo. *Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 241 (Tex. App.—Austin 2007, pet. denied); *Betts v. Betts*, No. 14-11-00267-CV, 2012 Tex. App. LEXIS 5395, at \*4 (Tex. App.—Houston [14th Dist.] July 10, 2012, pet. denied) (mem. op). We review a trial court's decision not to set aside a mediated settlement agreement for abuse of discretion. *R.H. v. Smith*, 339 S.W.3d 756, 765 (Tex. App.—Dallas 2011, no pet.); *In re C.H., Jr.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.). A trial court does not abuse its discretion if there is some substantive, probative evidence to support its decision. *Granger v. Granger*, 236 S.W.3d 852, 855–56 (Tex. App.—Tyler 2007, pet. denied); *Echols v. Olivarez*, 85 S.W.3d 475, 477 (Tex. App.—Austin 2002, no pet.).

## DISCUSSION

In a divorce action, the parties can enter into a mediated settlement agreement. *See* Tex. Fam. Code § 6.602. Section 6.602 provides that a mediated settlement agreement is binding on the parties if the agreement provides in prominently displayed boldface type that the agreement is not subject to revocation and is signed by each party and each party's attorney who is present. *See id.* § 6.602(b). The mediated settlement agreement is immediately binding, does not require approval of the court, and is not subject to repudiation. *See id.*; *Spiegel*, 228 S.W.3d at 241; *In re Marriage of Joyner*, 196 S.W.3d 883, 889 (Tex. App.—Texarkana 2006, pet. denied); *Cayan v. Cayan*, 38 S.W.3d 161, 165–66 (Tex. App.—Houston [14th Dist.] 2000, pet. denied.). Section 6.602 also provides that if a mediated settlement agreement meets the statutory requirements "a party is entitled

9

to judgment on the mediated settlement agreement notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Tex. Fam. Code § 6.602(c). Thus, the statute requires the trial court to render judgment on a section 6.602 mediated settlement agreement even if one party attempts to withdraw consent. *Joyner*, 196 S.W.3d at 890; *see Mullins v. Mullins*, 202 S.W.3d 869, 876 (Tex. App.—Dallas 2006, pet. denied) (unilateral withdrawal of consent does not negate enforceability of mediated settlement agreement in divorce proceedings). However, a trial court is not required to enforce a mediated settlement agreement if it is illegal in nature or was procured by fraud, duress, coercion, or other dishonest means. *Spiegel*, 228 S.W.3d at 241; *Joyner*, 196 S.W.3d at 889; *Boyd v. Boyd*, 67 S.W.3d 398, 403 (Tex. App.—Fort Worth 2002, no pet.).[6]

### Duress, coercion, or other dishonest means

The undisputed facts establish that the MSA in this case met the statutory requirements of section 6.602(b). However, in her first two issues, Andrea argues that, notwithstanding the MSA's compliance with section 6.602(b), the trial court abused its discretion

---

[6] Section 153.0071 of the Family Code provides for binding mediated settlement agreements in suits affecting the parent-child relationship, provided the same three statutory requirements set forth in section 6.602(b) are met. *See* Tex. Fam. Code § 153.0071(d). In a suit involving the parent-child relationship, a trial court may decline to render judgment on a mediated settlement agreement if it finds that a party to the agreement was a victim of family violence and that circumstance impaired the party's ability to make decisions and that the agreement is not in the child's best interest. *See id.* § 153.0071(e-1); *In re C.H., Jr.*, 298 S.W.3d 800, 804 (Tex. App.—Dallas 2009, no pet.). Although Andrea challenged the MSA as to conservatorship and possession in her motion to set aside the MSA and motion for new trial, raising best interests concerns, she does not raise that issue on appeal and challenges the MSA only as to the property division under section 6.602.

in enforcing the MSA because it was procured by duress, coercion, and undue influence.[7] Andrea contends that she experienced severe duress, coercion, and undue influence during the mediation resulting from Thomas's assault on her that was the culmination of years of physical and emotional abuse. She cites her diagnosis of PTSD and the testimony of Sherry that mediation could trigger PTSD symptoms and make a person with PTSD feel "undue influence" and have difficulty making rational decisions. Andrea also cites her own testimony that she was scared, could not stop thinking about the assault, could not catch her breath, could not remember agreeing to the MSA, and was unable to make rational decisions. Andrea contends that this evidence established that she was the victim of duress, coercion, and undue influence during the mediation.[8]

---

[7] Andrea also asserts that the agreement was obtained by fraud but in her opening brief does not cite to any evidence of fraud in the record and has therefore waived this argument. *See* Tex. R. App. P. 38.1(i). In her reply brief, Andrea cites to the financial statement and loan application Thomas produced, which indicated a higher net worth and income than the valuation to which he averred during the proceeding. However, Andrea testified that she was aware of those documents prior to mediation, and the record shows that the financial expert—who was either Andrea's expert or the parties' shared expert—offered a similar lower valuation of the parties' community property at the time of the mediation. In addition, Andrea testified that although she believed her husband had not been truthful during the proceeding, no one had materially misrepresented anything to her or failed to tell her the truth concerning the MSA. Thus, even were we to consider the evidence Andrea cites in her reply brief, we would conclude that it does not establish that the MSA was procured by fraud. *See In re Fannette*, No. 10-12-00141-CV, 2013 Tex. App. LEXIS 8558, at *16–20 (Tex. App.—Waco July 11, 2013, no pet.) (mem. op.) (upholding trial court's enforcement of mediated settlement agreement where there was conflicting evidence and wife did not meet burden of establishing fraud); *Torres v. Torres*, No. 14-12-00436-CV, 2013 Tex. App. LEXIS 2003, at *6–7 & n.2 (Tex. App.—Houston [14th Dist.] Feb. 28, 2013, no pet.) (mem. op.) (no fraud where evidence showed failure to understand terms of agreement, not intentional nondisclosure of assets); *cf. Boyd v. Boyd*, 67 S.W.3d 398, 405 (Tex. App.—Fort Worth 2002, no pet.) (upholding trial court's determination that agreement was unenforceable based on fraud where evidence showed husband failed to disclose all marital property and intentionally represented that he had).

[8] Andrea also complains that the mediation was conducted without the implementation of any measures to protect her. Section 153.0071(f) provides that in a suit affecting a parent-child relationship, a party may object to a referral to mediation and if mediation is held over the party's

11

As an initial matter, we consider Thomas's argument that Andrea has waived her complaints about the divorce decree by failing to seek to vacate the arbitration award. Although prior to the arbitration, Andrea filed a "Motion to Set Aside or Decline to Enforce a Mediated Settlement Agreement" asserting facts she now urges to support her claims of fraud, duress, and undue influence, she did not seek modification, correction or vacation of the arbitration award setting out the form of the divorce decree in accordance with the MSA. Nor did she object to the entry of the final decree of divorce based on the MSA and in the form set forth in the arbitration award. Having failed to challenge the arbitration award or the entry of the divorce decree, Andrea has waived her complaints concerning the final decree of divorce on appeal. *See* Tex. Civ. Prac. & Rem. Code §§ 171.0054(a)–(c) (arbitrator may modify or correct award on application of party within 20 days after award), .087 (unless grounds for vacating, modifying, or correcting award are offered, court shall confirm award), .088(b) (party must make application to vacate award within 90 days after award), .091(a), (b) (court shall modify or correct award in specified circumstances on application of party within 90 days after award); Tex. R. App. P. 33.1; *Ewing v. Act Catastrophe-Texas L.C.*, 375 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2012, pet. denied)

---

objection, the court shall order appropriate measures to ensure the physical and emotional safety of the objecting party. *See* Tex. Fam. Code § 153.0071(f). However, the record does not reflect that Andrea objected to mediation or otherwise requested any protective measure, nor does she offer any authority in support of this argument. In addition, although Andrea complains that the trial court ordered the parties to mediation only eight days after her divorce counsel withdrew and was replaced by new counsel, the record reflects that the parties attended mediation by agreement or in accordance with Travis County Local Rule 13.3 requiring mediation of all cases, and that none of her attorneys requested a continuance of the mediation. Therefore, Andrea has waived these arguments on appeal. *See* Tex. R. App. P. 33.1, 38.1(i); Travis (Tex.) Dist. Ct. Loc. R. 13.3(a) (available at http://www.supreme.courts.state.tx.us/rules/local/Travis/travis-dc.pdf (last accessed Nov.26, 2013).

(party failed to preserve error by failing to object to confirmation of arbitration award); *Kline v. O'Quinn*, 874 S.W.2d 776, 790–91 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (party waived grounds for appeal not included in motion to modify or vacate). However, even if Andrea had not waived her complaints, we would conclude that the evidence does not support her claims of duress, coercion, and undue influence.

Duress occurs when some kind of threat renders a person incapable of exercising free agency and unable to withhold consent. *Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 878 (Tex. 2005); *In re D.E.H.*, 301 S.W.3d 825, 829 (Tex. App.—Fort Worth 2009, pet. denied); *Arnett v. Arnett*, No. 03-05-00056-CV, 2008 Tex. App. LEXIS 3184, at *4 (Tex. App.—Austin May 2, 2008, pet. denied) (mem. op.). "Coercion occurs if someone is compelled to perform an act by force or threat." *In re D.E.H.*, 301 S.W.3d at 828; *Arnett*, 2008 Tex. App. LEXIS 3184, at *4 (quoting *In re D.E.H.*, 301 S.W.3d at 828). "[T]he essence of an undue influence claim is overcoming the free will of an individual and substituting the will of another, thereby causing a person to do an act which he would not otherwise have done." *In re D.E.H.*, 301 S.W.3d at 828 (quoting *B.A.L. v. Edna Gladney Home*, 677 S.W.2d 826, 831 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) (internal quotations omitted)).

At the prove-up hearing, the trial court questioned Andrea thoroughly concerning the mediation and the MSA. Although Andrea stated that she "wasn't focused" during mediation and did not remember understanding what she signed, she recited in considerable detail the events of the day. She testified that she had read and understood the MSA, it contained a prominently displayed statement in boldface type that it was not subject to revocation, she and her attorney had signed it,

13

and she was not being compelled to go forward with the approval of the MSA but was doing so freely and voluntarily. Further, at the hearing on her motion for new trial, Andrea testified that she stood by her testimony at the prove-up hearing. Although she testified that being near Thomas and hearing his voice had made her anxious and scared, there is no evidence of any force or threat or that Andrea lacked free will or was unable to withhold consent to the MSA. Therefore, had Andrea preserved this complaint, we would conclude that there is some substantive, probative evidence to support the trial court's decision not to set aside the MSA on those grounds. *See Granger*, 236 S.W.3d at 855–56; *In re Fannette*, No. 10-12-00141-CV, 2013 Tex. App. LEXIS 8558, at *16–20 (Tex. App.—Waco July 11, 2013, no pet.) (mem. op.) (upholding trial court's enforcement of mediated settlement agreement where agreement stated that parties signed without duress and husband refuted wife's testimony that wife was exhausted, confused, and coerced when she signed agreement and that husband was under undue influence from third parties to dispose of parties' home); *Zimmerman v. Zimmerman*, No. 04-04-00347-CV, 2005 Tex. App. LEXIS 6064, at *10 (Tex. App.—San Antonio Aug. 3, 2005, pet. denied) (mem. op) (trial court did not err in finding mediator did not coerce husband to sign agreement where husband's attorney testified retired judge mediator imparted his impression of what could possibly happen at jury trial); *Durham v. Durham*, No. 03-03-00303-CV, 2004 Tex. App. LEXIS 2609, at *3, 10–11(Tex. App.—Austin Mar. 25, 2004, no pet.) (mem. op) (upholding trial court's finding wife's testimony regarding duress from economic circumstances and coercion by mediator not credible); *see also Bolton*, 185 S.W.3d at 878; *In re D.E.H.*, 301 S.W.3d at 829; *Arnett*, 2008 Tex. App. LEXIS 3184, at *4–9. We would further

conclude the trial court did not abuse its discretion in declining to set aside the MSA on those grounds. *See Echols*, 85 S.W.3d at 477. We overrule Andrea's first and second issues.

**Mediated Settlement Agreement within the Meaning of Section 6.602**

In her third issue, Andrea argues in the alternative that although the MSA appears on its face to meet the requirements of section 6.602, it was not a *mediated* settlement agreement because the mediator left at approximately 4:00 p.m., and the negotiations continued until approximately 9:30 p.m., at which time the parties executed the agreement. Having failed to raise this argument in the trial court, Andrea has waived this issue on appeal. *See* Tex. R. App. P. 33.1; *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex.1991) (per curiam) (on motion for rehearing). Even if Andrea had not waived this issue, we would conclude that the MSA is a mediated settlement agreement within the meaning of section 6.602. *See* Tex. Fam. Code § 6.602(b). Andrea testified that the parties mediated for nine hours on the first day and for twelve hours on the second day. She also testified that the mediator was present on the first day and until 4:00 p.m. on the second day. The MSA is entitled "Mediated Settlement Agreement," recites that the parties "mediated this case" and that the agreement is not subject to revocation pursuant to sections 153.0071 and/or 6.602 of the Texas Family Code, and refers to "the mediator who facilitated" the agreement. Thus, the dispute resolution process involved "intervention between conflicting parties . . . to promote reconciliation, settlement, compromise, or understanding" and a "neutral third party who trie[d] to help the disputing parties reach a mutually agreeable solution." *See Webster's Third New Int'l Dictionary* 1402 (2002) (definition of mediation); *Black's Law Dictionary* 1070–71 (9th ed. 2009) (same). We overrule Andrea's third issue.

15

**Withdrawal of Consent to MSA**

In her fourth issue, Andrea argues further in the alternative that because the MSA was not "mediated" so as to fall within the scope of section 6.602, it was subject to the general contract defense that she withdrew her consent prior to the trial court's approval of the MSA. However, we have already rejected the argument that the agreement was not "mediated." Further, the undisputed facts establish that the MSA meets the statutory requirements, and we have already concluded that the trial court did not abuse its discretion in deciding not to set aside the MSA based on these grounds. Therefore, the MSA was binding on the parties and not subject to repudiation, and the trial court was required to render judgment on the MSA even though Andrea attempted to withdraw consent. *See* Tex. Fam. Code § 6.602(b)(1)–(3); *Spiegel*, 228 S.W.3d at 241; *Mullins*, 202 S.W.3d at 876; *Joyner*, 196 S.W.3d at 889–90; *Cayan*, 38 S.W.3d at 165–66. We overrule Andrea's fourth issue.

**Reversal on Equitable Grounds**

In her fifth issue, Andrea contends that the terms of the MSA are "grossly unfair and unconscionable" and the MSA should be set aside on equitable principles. However, the Texas Supreme Court has held that if a mediated settlement agreement meets the statutory requirements, "the trial court will not go behind the signed agreement to evaluate its merits but must render judgment on the parties' agreement." *Milner v. Milner*, 361 S.W.3d 615, 616 (Tex. 2012). Section 6.602 has been described as a "procedural shortcut" for enforcement of mediated settlement agreements in divorce cases. *See Joyner*, 196 S.W.3d at 891; *Cayan*, 38 S.W.3d at 166. "The court is not allowed to modify Section 6.602 agreements as it sees fit, and it has no authority to enter

16

a judgment that varies from their terms." *Joyner*, 196 S.W.3d at 890–91; *see Toler v. Sanders*, 371 S.W.3d 477, 480 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (family code does not authorize court to modify mediated settlement agreement before incorporating it into decree). Nor is the trial court required to determine if the MSA is "just and right" as it is with other settlement agreements in family law. *Milner*, 361 S.W.3d at 618; *Joyner*, 196 S.W.3d at 889, 891; *Cayan*, 38 S.W.3d at 166. Thus, Andrea's challenge to the fairness of the MSA has been "foreclosed by the legislature," and the trial court had no discretion to reject the MSA. *See Kott v. Kott*, No.03-06-00398-CV, 2008 Tex. App. LEXIS 1464, at *6–7 (Tex. App.—Austin Feb. 29, 2008, no pet.) (mem. op.) (party's challenge to mediated settlement agreement on grounds that the property division was not just and equitable foreclosed by section 6.602 and to conclude otherwise would imply trial court discretion to reject such agreement); *Carson v. Carson*, No. 03-04-00521-CV, 2005 Tex. App. LEXIS 9250, at *3 (Tex. App.—Austin Nov. 4, 2005, no pet.) (mem. op.) (to extent appellant sought to disturb the contents of mediated settlement agreement, issues were barred by statute and language of agreement). We overrule Andrea's fifth issue.

## CONCLUSION

Having overruled Andrea's issues, we affirm the trial court's final divorce decree.[9]

---

[9] Thomas has pending before this Court Appellee's Motion to Strike Material Outside the Appellate Record and Appellee's Motion to Strike Matters Outside the Record on Appeal, or in the Alternative Motion for Leave to File Sur-Reply Brief. We dismiss the motions as moot.

_____

Melissa Goodwin, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   December 13, 2013